64 N.J. Super. 465 (1960)
166 A.2d 585
MAYFAIR FARMS HOLDING CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
KRUVANT ENTERPRISES CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1960.
Decided December 23, 1960.
*468 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Walter D. Van Riper and Mr. William A. Wachenfeld argued the cause for plaintiff-appellant (Messrs. Van Riper and Belmont, attorneys).
Mr. Jerome C. Eisenberg argued the cause for defendant-respondent (Messrs. Hannoch, Weinstein, Myers and Stern, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff corporation sued to recover $79,000 allegedly due from Kruvant Enterprises Co. ("Kruvant" hereinafter) as the unpaid balance due on a sale of real estate in West Orange. The material defenses specified by the pretrial order were discharge by novation and discharge by accord and satisfaction. Judge Schechter, sitting in the Law Division without a jury, heard the case, which *469 was submitted entirely on documentary evidence and stipulations of fact, and without oral testimony. He decided in favor of the defendant on the ground of novation of the agreement sued on by a later one entered into by plaintiff with Empire Holding Company ("Empire" hereinafter). The officers and directors of Kruvant and Empire are identical, being Norman B. Kruvant, Philip Kruvant and Charles Kruvant.
The material facts are as follows. On October 29, 1955 plaintiff and Kruvant modified an earlier agreement of sale to the latter of certain vacant land in West Orange so as to agree on a purchase price of $158,000, payable $79,000, in part by deposit forthwith and the remainder on closing, set for January 2, 1956, and the balance of $79,000 on a fixed condition. This was: "* * * if and only in the event that within three (3) years from the date hereof, the governing body of the Town of West Orange has enacted an ordinance changing the zoning requirements covering said premises, to any classification other than that which now applies thereto." It was further agreed that plaintiff's attorneys, Messrs. Van Riper and Belmont, should at Kruvant's expense continue efforts already initiated to secure a zoning change. At the time, the property was in a residential zone district.
On December 29, 1955 the Kruvant board of directors authorized, and there was executed, an assignment of its interest in the contract to Empire, reciting that it was "subject to all terms and conditions therein stated." On December 30, 1955 the Empire board of directors resolved to purchase the contract, subject to all rights, conditions and obligations therein, and authorized its consummation. The same day title was closed between plaintiff and Empire by the delivery of deeds for the property and payment by Empire of the balance of the $79,000 then due. Empire executed and delivered at the closing to plaintiff a letter agreement approved in writing by the latter, in which the $79,000 contingent liability was dealt with as follows:
*470
 "Mayfair Farms Holding Corp.
 481 Eagle Rock Avenue
 West Orange, N.J.
Gentlemen:
There having been delivered to the undersigned this date, deeds from you in accordance with the Article of Agreement dated March 26, 1955, as amended October 29, 1955, between you and our assignee [inadvertent  means `assignor'], Kruvant Enterprises, this instrument acknowledges and declares that all obligations under said agreements have been performed by the parties, except the following obligations of the undersigned, which obligations the undersigned acknowledges and declares have survived and do survive the delivery of said deeds, to wit: 
1. In the event that within three years from October 29, 1955, the governing body of the Town of West Orange shall have enacted an ordinance which shall permit but not require the use of the properties described in said deeds for all the purposes now designated in existing zoning ordinance of said Town as classification R-G, R-M, BI, I 2 and N-RS, then the undersigned agrees to pay you $79,000.00 within one year following the date when said ordinance becomes legally effective; that is, time for all review has expired or if review is taken by referendum or legal proceedings, or both, all such proceedings have resulted in sustaining the validity of said ordinance.
No obligation to pay said sum shall exist if said ordinance, as amended, limits or restricts the use of the properties described in said deeds to purposes prohibited by the restrictions contained in said deeds.
2. The undersigned further agrees that Van Riper and Belmont, Esqs., your attorneys, shall, at the expense of the undersigned, continue efforts already initiated to secure such zoning changes and the undersigned agree to render its full aid and assistance in furtherance of such application when and as required by such counsel.
3. At the end of eighteen months from October 29, 1955, the undersigned shall have the option to discontinue further efforts to procure such re-zoning provided, however, that if, at that time, an ordinance has already been enacted but either through referendum proceedings or legal proceedings, or both, the validity thereof is under review then the right to discontinue such efforts shall not accrue until such proceedings have finally terminated.
4. If efforts to effect such re-zoning are discontinued but nevertheless, as a result of new applications such re-zoning becomes so legally effective within three years from October 29, 1955, then, and in that event, and upon such re-zoning becoming so legally effective, the undersigned will pay to you the said sum of $79,000 within one year thereafter.
*471 5. The undersigned shall have the right, at any time, subsequent to the date hereof, to anticipate the payment of said sum.
 Attest: Very truly yours,
 /s/ Philip Kruvant, EMPIRE HOLDING CO.
 Secretary. a corporation,
 By /s/ Norman B. Kruvant,
 President
 (Seal)
The foregoing is approved and is accepted.
 MAYFAIR FARMS HOLDING CORP.
 Attest:
 By: /s/ Martin L. Horn,
 /s/ Martin L. Horn, Jr., President.
 Secretary.
 (Seal)
 Dated: Dec. 30th 1955."
A closing statement was executed and signed by both Empire and plaintiff. This shows, opposite the entry of the "to be paid" additional $79,000 of the $158,000 purchase price, the legend: "(This amount shall be paid to the Seller herein if the conditions of the continuing agreement which was this day executed between the parties hereto are accomplished.)."
On December 18, 1956 the governing body of West Orange enacted an ordinance effecting a change of the zoning classification of the property in question to "DLB-2," which was other than residential. Plaintiff claims that this event fixed Kruvant's liability to pay it the $79,000 due under the October 29, 1955 agreement, unaffected by what transpired at the title closing between itself and Empire. Defendant's position is that the legal effect of the closing transactions of December 30, 1955, particularly the letter quoted above, was to discharge Kruvant entirely and to remit plaintiff to the terms of that letter for its rights to any further payment, and to Empire as the sole continuing obligor in the matter.
Before embarking upon the real issues before us, certain animadversions by plaintiff in its briefs and at the oral *472 argument should be noticed. It is conceded by the parties that West Orange has never adopted a zoning ordinance or amendment thereto having the effect of placing the property in question in or permitting its use for any of the purposes allowed in any of the zone classifications mentioned in paragraph 1 of the letter of December 30, 1955. It is also agreed that there was and is no such zone as "BI," mentioned therein. (The ordinance provides, inter alia, for districts denominated "B" (retail business), "I-1" (wholesale business and limited industry), "I-2" (General Industry), "DLB-1" (designed limited business). While plaintiff stresses this error in the letter agreement and suggests the unfairness of making the $79,000 obligation depend upon its securing a zone change that would permit the property to be used for all of the purposes allowed in all the different district classifications specified  a most unlikely event  it is to be emphasized that it has never raised in this case, even at argument, any issue of mistake, vagueness, impossibility of performance or failure of consideration, or sought reformation of the letter agreement. It stands solely on its alleged right to recover for effecting the condition specified in the October 1955 agreement.
In terms of realistic fairness and justice, it would appear that if, as defendant suggested at the argument, the intention of the December 30, 1955 letter was that the $79,000 should be payable if a rezoning permitted the use of the property for the purposes allowed in any one of the zones specified in the letter, that result never occurred in fact, and so plaintiff never earned the additional $79,000, even within that more reasonable hypothesis of the intent of the parties in changing the contingency as fixed by the October 1955 agreement. (Plaintiff does not contend that the unintelligible "BI" district mentioned in the letter was intended to mean "DLB-2," to which district the property was in fact rezoned.)
*473 In any event, neither party having at any time raised any issue of mistake, reformation or the other questions mentioned above, we must resolve the issue before us strictly on the case as pretried, tried and argued on appeal.
Before considering the legal principles of novation and accord and satisfaction which we have concluded control the determination of this appeal, it will be well to formulate the findings of fact justified by this record. They seem to us not susceptible of reasonable differences of opinion. In October 1955 Kruvant and plaintiff ("Mayfair" hereinafter) modified a prior land sale contract, and their resulting agreement was for the sale of the land for a price of $158,000, of which $79,000 was payable absolutely and the remaining $79,000 only on condition that within three years a zoning change was effected transferring the property to any use classification other than that in which it then stood. At or about the time of the closing of title Mayfair, Kruvant and Empire all agreed that the title would close between Mayfair and Empire as vendee, rather than between Mayfair and Kruvant; that Empire would at the closing pay the $63,500 balance of the $79,000 absolutely due under the contract; and that the condition for payment by Empire of the remaining $79,000 would be changed from the simple alteration of zoning status originally agreed upon to a different contingency, which, under the case as submitted, must be taken to be that which was expressed in the letter of December 30, 1955, expressly concurred in by Mayfair and Empire in writing. For present purposes we are not concerned with the interpretation of the condition in that letter agreement. All that matters is that the Kruvants, officers and directors of both Empire and Kruvant, and the representatives of Mayfair, were agreed that the condition of the October 1955 agreement was totally superseded by the new arrangement. Equally inescapable is the conclusion, to be drawn from all the surrounding circumstances, that Empire was being substituted for Kruvant as the obligor on the *474 conditional obligation for the $79,000 and Kruvant intended to be released from its now obsolete original liability.
Plaintiff has undertaken a demonstration, from isolated clauses and phrases in the various writings involved and from the fact that the corporate agreements between Kruvant and Empire preceded by a day or less the actual closing of title, that Mayfair never acceded, expressly or impliedly, to a release of Kruvant from its conditional liability under the earlier agreement. We see no profit in discussing in detail its exegesis of the several texts involved, or, indeed, that to the contrary effect submitted by defendant, although we have examined all of the arguments with care. We do think there is probative significance in the recital of the December 30, 1955 letter that "all obligations" under the prior agreements "have been performed" except the obligation of Empire to pay the $79,000 under the specific condition of that letter, same to "survive" the delivery of the deeds. This tends to support the inferences we have drawn.
Of overriding relevance here is the principle that several writings forming essentially a single transaction should be construed together. Lawrence v. Tandy & Allen, 14 N.J. 1, 6 (1953); Graybar Electric Co. v. Continental Cas. Co., 50 N.J. Super. 289, 294 (App. Div. 1958); Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 463 (App. Div. 1958). In appropriate circumstances this rule may obtain even when the parties are not the same, if the several instruments were known to all the parties. Schlein v. Gairoard, 127 N.J.L. 358, 360 (E. & A. 1941).
The several writings here involved are not models of clarity and consistency of expression. Nevertheless, taking them as a whole, and against the surrounding circumstances fairly inferable from the documentary proofs, the conclusion cannot be sensibly avoided that by the time the closing had been concluded on December 30, 1955, it was understood by the presumably business-wise individuals acting for their corporate principals in these transactions that Mayfair had agreed to substitute the contingency specified in the *475 December 30, 1955 letter as the condition for its right to receive the $79,000 in question, in place of that fixed by the October 1955 agreement, and to look only to Empire, not Kruvant, for payment in the event of the newly formulated contingency; moreover, that Empire and Kruvant were in full concurrence with Mayfair in these understandings.
Plaintiff correctly stresses that the burden of proof rested on defendant to show discharge of the original obligation by novation. It contends that defendant's case was deficient in oral testimony explicatory of its version of the facts. But the documentary transactions in evidence and the inferences of fact fairly justifiable from them amply bear out the factual conclusions stated above; in the face of such proofs, it was incumbent upon plaintiff to show, if it could, that the truth was otherwise.
We thus arrive at the assessment of the case in terms of principles of law applicable to the facts established.
The rules of novation applicable here are those stated in Restatement of the Law of Contracts, §§ 427 and 428. They read as follows:
§ 427. "Where a creditor by a contract with a third person agrees to the immediate discharge of the original debtor, in consideration of a promise by the third person, made either to the creditor or to another, to render the performance for which that debtor was previously bound or some other performance, there is a novation discharging the original debtor and giving the promisee a new right."
§ 428. "Where a third person contracts with a debtor to assume, as an immediate substitution for the debtor's duty, a duty to the creditor to render either the performance for which the debtor was previously bound, or some other performance, and the creditor agrees either with the debtor or with the third person to such substitution, there is a novation that discharges the original debtor and subjects the third person to a duty to the creditor."
See also 6 Williston on Contracts (1938), § 1865 et seq., p. 5239 et seq.; 6 Corbin on Contracts (1951), § 1297, p. 162. Insofar as the contingent obligation of $79,000 was concerned, taking that apart from the transaction *476 as a whole (we consider later the applicability of the rule of accord and satisfaction), a novation occurred here by the understanding of the parties, found as a fact above, that as part of the transaction by which Empire undertook the new obligation, Kruvant was discharged from the old one. The fact that Empire's stipulated performance was conditioned differently from Kruvant's prior obligation is of no consequence under the Restatement rules as formulated above ("or some other performance"); and see Williston, op. cit., supra, § 1865, pp. 5241, 5242; Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., 78 N.J.L. 309, 311 (Sup. Ct. 1909). An intention to discharge the former debtor in the course of the novation need not be shown by express words to that effect but may be implied from the facts and circumstances. See Sixteenth Ward Building & Loan Ass'n of Newark v. Reliable Loan, &c., Co., 125 N.J. Eq. 340, 343 (E. & A. 1939).
Plaintiff urges there is no permissible inference of assent by Kruvant, the original obligor, to the arrangements at the closing between Empire and Mayfair, and that in the absence of such assent an effective novation cannot take place, citing Mooney v. Newbern, 5 N.J. Misc. 585 (Sup. Ct. 1927); Sixteenth Ward Building & Loan Ass'n of Newark v. Reliable Loan, &c., Co., supra; and J. Schlainsey, Inc. v. Aitken, 127 N.J.L. 246 (E. & A. 1941). The factual premise is insupportable; the legal conclusion, of doubtful validity. As plaintiff itself stresses in its brief in other connections, Empire and Kruvant had the same officers and directors. To say that these people, while acting as representatives of Empire at the closing, were not, at least impliedly, also assenting to the beneficial discharge of Kruvant, as officials of that corporation, is most unrealistic. We find and hold to the contrary. Moreover, the decisions of the Court of Errors and Appeals cited above are only obiter dicta on the point of necessity of assent by the discharged original debtor, since the findings of fact in both the Sixteenth Ward Building & Loan Ass'n of Newark and *477 J. Schlainsey, Inc. cases were that there was no intent by the creditor to discharge the original debtor.
Both reason and sound authority support the concept that assent by the original debtor to his discharge is not a requisite of novation. A debtor can be discharged without his knowledge or consent. In a novation where the creditor discharges the original debtor, the latter is the donee beneficiary of the transaction. The leading authorities are in accord on these views. 6 Corbin, op. cit., supra, § 1299, p. 170; 6 Williston, op. cit., supra, § 1870, pp. 5254-5257; Restatement of the Law of Contracts, § 427, comment (a). Of course, the debtor may disclaim the benefit conferred upon it, as by failing to plead discharge when sued, but unless he does, the discharge stands. Ibid.
Thus far, we have been considering the situation only in the aspect of the substitution of parties and change of terms of agreement relative to the $79,000 contingent obligation. This phase of the transaction, except for the discharge, was entirely executory, and typical of the ordinary novation. See comments under Restatement of Contracts, § 424, p. 798; Cooke v. McAdoo, 85 N.J.L. 692, 694, 695 (E. & A. 1913). Actually, however, the facts in their entirety show an accord and satisfaction. The original bilateral agreement of sale between Mayfair and Kruvant was consummated, Kruvant being supplanted by Empire, by delivery of deeds for the property, payment of what was then due under the contract, and the entry by Empire into the new undertaking for payment of the contingent obligation. "An accord may be an agreement between a claimant and a third person who is not the obligor; and a performance rendered by such third person and received by the claimant in satisfaction of the claim operates as a discharge of the obligor." 6 Corbin, op. cit., supra, § 1285, p. 118. Moreover, the courts will not measure the value of the substituted performance accepted by the obligee from the third person as against that of the original obligation, so long as it was agreed to constitute discharge of the original obligation. Id., pp. 120-122.
*478 Nor is it of consequence that the satisfaction consists in part of the giving by the third person of a new promise. See 6 Williston, op. cit., supra, § 1867, p. 5252.
Defendant's original obligation may be regarded as having been effectively discharged under the theories of both novation and accord and satisfaction.
A final observation as to a contention made by plaintiffs for the first time at the argument. This is that if the West Orange authorities had enacted such a zoning amendment, applicable to the instant property, as would have met the literal condition of the December 30, 1955 letter, as expressed therein, it would have been valueless, as constituting illegal spot zoning. This argument is, of course, improperly advanced at the existing posture of the case. But it is common knowledge that zoning amendments of questionable validity are frequently uncontested, and it therefore cannot be necessarily said that parties may not contractually bind themselves to make the amount of the purchase price of property contingent upon the passage of such a zoning amendment.
Judgment affirmed.