157 N.J. Super. 279 (1978)
384 A.2d 913
THOMAS F. KEEGAN, ADMINISTRATOR C.T.A. OF THE ESTATE OF EDWARD J. KEEGAN, DECEASED, AND ADMINISTRATOR OF THE ESTATE OF BARBARA ANN KEEGAN, DECEASED, PLAINTIFF,
v.
THE ESTATE OF EDWARD J. KEEGAN, THE ESTATE OF BARBARA ANN KEEGAN, THOMAS F. KEEGAN; EDWARD J. KEEGAN, JR.; THOMAS F. KEEGAN, GUARDIAN OF BARBARA ANN KEEGAN; THOMAS F. KEEGAN, GUARDIAN OF MARY BETH KEEGAN; THOMAS F. KEEGAN, GUARDIAN OF MARK E. KEEGAN; THOMAS F. KEEGAN, GUARDIAN OF DAVID E. KEEGAN; THOMAS F. KEEGAN, ADMINISTRATOR OF THE ESTATE OF ROBERT EDWARD KEEGAN, ALSO KNOWN AS ROBERT E. KEEGAN; THOMAS F. KEEGAN ACTING UNDER THE STATUTE N.J.S.A. 3A:6-6 FOR THE ESTATE OF MICHAEL KEEGAN, ALSO KNOWN AS MICHAEL EDWARD KEEGAN, JOSEPH EDWARD KEEGAN, DECEASED, JAMES EDWARD KEEGAN, DECEASED; STATE BANK OF MANVILLE; COMMUNITY STATE BANK AND TRUST COMPANY; PAUL KEITH; MIDATLANTIC NATIONAL BANK; MICHAEL PALAZZOLO; WALTERS NURSERY INC.; BRADEN'S FLYING SERVICE; ROSE BEDELL; CARDINAL AIRWAYS; ANTHONY CONSTANZO; H.J. OPDYKE LUMBER CO., INC.; ALVICE M. CRUZ; CENTRAL HOME TRUST COMPANY; AGWAY PETROLEUM CORPORATION; CITY NATIONAL BANK OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 17, 1978.
*282 Mr. Nathan Reibel for plaintiff (Messrs. Reibel and Isaac, attorneys).
Mr. Richard M. Conley, pro se, administrator ad litem of the estate of Edward J. Keegan.
Mr. John W. Thatcher, pro se, administrator ad litem of the estate of Barbara Ann Keegan.
Mr. George Warren, pro se, guardian ad litem of Mary Beth Keegan, Mark E. Keegan and David E. Keegan, infants.
Mr. Andrew M. Epstein for defendant City National Bank of New Jersey (Messrs. Epstein, Epstein, Brown, Bosek and Turndorf, attorneys).
Mr. Stanley Friedman for defendant trustees of the trust fund for the benefit of the shareholders of the State Bank of Manville (Messrs. Trombadore and Trombadore, attorneys).
*283 Mr. George W. Canellis for defendant Michael Palazzolo (Messrs. Sauer, Boyle, Dwyer, Canellis and Cambria, attorneys).
MORTON I. GREENBERG, J.S.C.
On June 1, 1976 all six persons on board an airplane were killed in a crash. They were the presumed pilot, Edward J. Keegan, and Barbara Ann Keegan, his wife, and four of their ten children, Robert Edward Keegan, Michael E. Keegan, Joseph Edward Keegan and James Edward Keegan. There is no evidence of the order of death. Edward J. Keegan died testate, his will having been executed March 6, 1974. Barbara Ann Keegan died intestate with no indication that she had ever had a will. On September 8, 1976 a surviving child, Thomas F. Keegan, his father's executor having renounced, qualified as administrator with the will annexed of his father's estate and as general administrator of his mother's estate and of the estate of his brother Robert Edward Keegan. He has also filed affidavits in lieu of administration for his three other deceased brothers. See N.J.S.A. 3A:6-6. These proceedings were taken before the Hunterdon County Surrogate.
The financial affairs of the senior Keegans, particularly Edward J. Keegan, were tangled, as evidenced by claims and judgments. Both estates have, by stipulation in this action, been declared insolvent. The problems of Edward J. Keegan seem to be derived mainly from his activities as an officer of the State Bank of Manville.
In an effort to bring about orderly administration and to resolve controversies concerning property ownership, this litigation was brought on April 18, 1977 by Thomas F. Keegan as administrator of his parents' estates. The complaint sets forth that plaintiff's parents had owned as tenants by the entireties a valuable but mortgaged property in Milford, Hunterdon County, which at the time of the filing of the complaint was under foreclosure. Devolution of title to the real estate was, for reasons discussed herein, in doubt. *284 The complaint also states that execution could issue on judgments in other cases, and that entitlement to proceeds of substantial amounts of life insurance was in doubt. Plaintiff named as defendants the estates of his parents and the surviving children, including himself individually and in a representative capacity for the four children who were infants, as well as his parents' known creditors. This court, without objection of counsel, has determined that it should exercise jurisdiction and not transfer the complaint to the Hunterdon County Court even though ordinarily proceedings with regard to administration should be in the County Court in cases in which the letters of administration are taken out before the surrogate. See Rogozinski v. Rogozinski, 109 N.J. Super. 138 (Ch. Div. 1970). The court reasoned that even if ultimately it be determined that the authority of the Hunterdon County Court extended to all matters raised before this court, N.J.S.A. 3A:2-2, the unusual circumstances of this case justified the intervention of this court exercising its undeniable jurisdiction. N.J.S.A. 3A:2-1; R. 4:86-1. It was deemed imperative that interlocutory orders be made promptly without question of jurisdiction. For example, by order of this court of June 22, 1977, the real estate was sold pendente lite for $120,000 by a special master and the net proceeds after payment of mortgages deposited with the Clerk of the Superior Court. This sale resulted in preserving for the estates the net sale price of $21,533.12. It should also be noted that at the trial other matters were settled, leaving only the issues dealt with in this opinion to be determined by the court. Because of the conflicting position of Thomas F. Keegan as the representative of all the estates, the court appointed administrators ad litem for the estates of Edward J. Keegan and Barbara Ann Keegan. N.J.S.A. 3A:6-14; R. 4:80-9. The court also appointed a guardian ad litem for the minor surviving children. With respect to parties it should finally be noted that many creditors did not answer and their default has been entered. Other parties, *285 though not defaulting, have not actively engaged in this litigation.
The first task for the court is to determine who owned the proceeds of sale of the real estate. This raises a question under the Uniform Simultaneous Death Law, N.J.S.A. 3A:5-1 et seq. Research of the court and counsel indicates that the question has never been considered in any reported opinion even though the act has been adopted in almost every state. See table following N.J.S.A. 3A:5-1. The real estate had been acquired solely by Edward J. Keegan in 1970. By a deed dated January 2, 1972, Edward J. Keegan and Barbara Ann Keegan conveyed the property to themselves. Though the deed was not in evidence, the parties stipulated that it created a tenancy by the entireties and made no reference to survivorship rights upon simultaneous death. On March 6, 1974 Edward J. Keegan executed a trust agreement and will. They were prepared by an attorney in furtherance of a program of sophisticated estate planning. The trust agreement established an initial trust corpus of certain insurance policies issued by the Penn Mutual and National Service life insurance companies. In addition it provided that the settlor could add property to the trust during his life. He retained full control over property placed in the trust and reserved a power of revocation, although it was not used. Upon his death the trust corpus was to be divided into two parts designated "A" and "B". Part "A" was to "consist of an amount of the Trust Estate which, when added to all property received by the Settlor's wife, Barbara Keegan, whether passing under this trust agreement, the Settlor's last Will and Testament or otherwise, and included in the Settlor's gross estate for federal estate tax purposes, shall equal in value the sum needed to obtain the maximum marital deduction for federal estate tax purposes." Part "B" was to be the balance of the trust estate. The income from part "A" was payable to Barbara Ann Keegan during her lifetime. She was given a general power of appointment over the corpus, exercisable *286 by will. Part "B" was for the benefit of the family. The trust agreement further provided:
If the Settlor's wife, Barbara Keegan, in fact survives him, or if she and he die under such circumstances that there is no sufficient evidence that they have died otherwise than simultaneously, the Settlor's said wife shall be conclusively presumed to have survived him. Any beneficiary under this Agreement, with the exception of the Settlor's said wife, however, shall be conclusively presumed to have pre-deceased the Settlor if such beneficiary shall die within thirty days after his death.
The will, after disposing absolutely of items of personal use to Barbara Ann Keegan, devised and bequeathed the balance of the estate to the trustee to become a portion of the trust corpus. In language substantially the same as in the trust it provided that in the event of the death of testator and Barbara Keegan "under such circumstances that there is no sufficient evidence that we have died otherwise than simultaneously, my said wife shall be conclusively presumed to have survived me." Neither the will nor the trust made specific reference to the real estate.
This court, in order to allot properly between the two estates the proceeds of the sale, must determine whether the survivorship provisions of the will or the trust agreement can affect the passing of the property. N.J.S.A. 3A:5-3 provides:
Where there is no sufficient evidence that 2 joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived. If there are more than 2 joint tenants and all of them have so died, the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants.
This section is consistent with other sections of the law which establish a principle that a survivor, legatee, devisee or beneficiary of a decedent will be deemed to have predeceased the decedent in the absence of sufficient evidence that *287 the persons died other than simultaneously. N.J.S.A. 3A:5-1; N.J.S.A. 3A:5-3; N.J.S.A. 3A:5-4. Thus, unless the survivorship provisions of the will or trust apply, one-half of the proceeds of the sale of the real estate must be allocated to each state. But this otherwise conclusive presumption is subject to modification by the parties for N.J.S.A. 3A:5-6 provides:
This chapter shall not apply in the case of wills, living trusts, deeds, or contracts of insurance, wherein provision has been made for distribution of property different from the provisions of this chapter.
Therefore, if the survivorship provisions apply, all the proceeds belong to the estate of Barbara Ann Keegan. Newman v. Chase, 70 N.J. 254, 259 (1976).
It is argued on behalf of the estate of Barbara Ann Keegan that N.J.S.A. 3A:5-6 was satisfied as to the real estate by the provision in the will which established a presumption of her survivorship. While no specific reference to the trust instrument seems to have been made in the briefs, the court assumes that a like argument would also be adopted as to the effect of that instrument. It may be further argued that since a spouse may convey his interest in property held by the entireties, including his right of survivorship, subject to termination by his death prior to his spouse (see King v. Greene, 30 N.J. 395 (1959)), his act outside the deed should under appropriate circumstances be given effect to renounce his survivorship interest. For the estate of Edward J. Keegan it is urged that the presumption of survivorship must be made in the instrument passing title, so that reference in the will or trust cannot affect the title to property that, as between the tenants, would pass outside the will. It is maintained that since title to property held by the entireties is not affected by the will of the first tenant to die but rather is owned by the survivor, see King v. Greene, supra, no declaration in the will should affect title to the real estate. In answer to this argument it may be *288 noted that the claim of the estate of Barbara Ann Keegan is not inconsistent with the traditional concept of a tenancy by the entireties since the right of survivorship is not challenged. To the contrary, the argument is that Edward J. Keegan simply established an order of death. The order being determined, the right of survivorship applies.
The court holds that construction of N.J.S.A. 3A:5-6 depends less on the technical aspects of a tenancy by the entireties than on legislative intent. That section, in providing that the presumption of prior death of each tenant does not apply "in the case of wills, living trusts, deeds, or contracts of insurance, wherein provision has been made for distribution of property different from the provisions of this chapter," by its plain wording refers to the particular instrument passing title. If language in a trust or will could affect title passing between the parties under a deed by establishing the order of death, it would follow that if a deed had survivorship language similar to the language in Edward J. Keegan's will, it could affect title to property passed by will even though the will were silent on the point. This consequence might very well be contrary to the testator's intent. While, under particular circumstances, a person might desire a survivorship provision in one instrument to control property passing under another, the court cannot assume that this would usually or always be so. Further, a per se rule that any survivorship declaration affects other instruments passing title would require that a person executing any document modifying the statutory presumption expressly limit the instrument to property passing under it or negate the presumption elsewhere.
But rejection of a per se rule should not mean that the court ought never apply the language in one instrument to affect another. Our courts look to intent over form in matters of disposal of decedents' estates. See Engle v. Siegel, 74 N.J. 287 (1977); Sadofski v. Williams, 60 N.J. 385, 399-400 (1972). Thus, if the surrounding circumstances, including parol evidence, indicate that a decedent's *289 intent will be furthered by application of the survivorship provision in one instrument to property passing under another, such construction should be adopted. But here there is no evidence of actual intent. No parol testimony on this point was offered. Nor can such an intent be inferred. The court believes that counsel would recognize that as between a husband and wife the passing of property owned by the entireties would be unaffected by a will. Had the draftsman intended to affect rights in such property, a new deed could have been executed. Failing that, counsel could have at least made specific reference in the will or trust to the real estate. Further, no tax consideration was suggested at oral argument or in the briefs to support a conclusion that the survivorship provisions should control the deed. It is also significant that the proceeds of a $150,000 life insurance policy discussed later in which Barbara Ann Keegan was the prime beneficiary, are clearly not to be distributed as though Barbara Ann Keegan had survived Edward J. Keegan. Since this seems to be the most significant asset available by reason of his death it cannot be said that a pattern of the presumed survival of Barbara Ann Keegan has been shown.
A circuity question is created by the conclusion that the deed is not affected directly by the will. With respect to his interest in the real estate Edward J. Keegan survived his wife and thus the property passes under his will. And under the will Barbara Ann Keegan is deemed to have survived Edward J. Keegan. But it cannot be held from this that the intent of the testator was to affect survivorship rights under the deed. It is as a matter of law coupled with the absence of evidence of contrary intent that Edward J. Keegan's interest in the real estate falls into his estate and may become subject to the survivorship provisions of the will. A suggestion that therefore the survivorship provision should affect the deed as a matter of testator's intent before the property became a portion of the estate would be a fiction. The court notes that it could be argued that as *290 to the real estate as a portion of the estate the survivorship provisions of the will and trust would not apply because the provisions as to the real estate had already been rejected. But the insolvency of the estate of Edward J. Keegan moots the problem, for the proceeds will go to his creditors in any event.
While the court doubts that fairness should be considered in determining intent, it may be noted that the result reached is equitable. Application of the survivorship clause to the real estate would deprive the creditors of Edward J. Keegan of the benefit of the property which he owned and would enhance his wife's estate by an equal amount for distribution to her creditors. The two groups are not identical. Since he had a one-half interest in the property, his creditors should have the proceeds of its sale available for their benefit, particularly since there is no suggestion that she was the source of funds to acquire or maintain the property.
A second issue before the court involves ownership of certain bank accounts said to total not more than $1,500 and to be in the names of Edward J. Keegan and Barbara Ann Keegan as joint tenants with the right of survivorship. The signature cards and passbooks were not available at the trial nor was there parol evidence concerning ownership of these accounts beyond the agreement that the source of the funds had been Edward J. Keegan. In the absence of specific evidence counsel, at the suggestion of the court, presented the matter on an abbreviated record consisting of these agreed facts. The absence of collateral circumstances requires that the accounts be deemed held in a true joint tenancy, N.J.S.A. 17:9A-218; Sadofski v. Williams, 60 N.J. 385 (1972). Thus, under N.J.S.A. 3A:5-1 or N.J.S.A. 3A:5-3 the joint tenants are treated as having survived each other. For the reasons as above set forth with respect to the real estate, N.J.S.A. 3A:5-6 does not apply to the bank accounts. Therefore one-half of the accounts will be allotted to each estate.
*291 The next aspect of the case involves ownership of the proceeds of life insurance from a $150,000 policy with the Manufacturers Life Insurance Company. The application, dated February 10, 1975, was originally for a $200,000 policy. It listed as primary beneficiary Barbara Keegan and as secondary beneficiaries "All children born of marriage." Thereafter, in an instrument called "Application for change in policy," dated April 2, 1975, decedent signed a form reading as follows:
This policy is to be split into two policies, one in the amount of $150,000 and the other in the amount of $50,000. Owner and beneficiary are to remain the same, owner  Edward J. Keegan, beneficiary  Barbara Keegan, wife. Both policies are to be dated 11 February 1975.
The court does not know why the policy was split but notes that the original application was for a policy with a provision for accidental death benefits, whereas only the $150,000 policy was to have such coverage. The policy as issued lists the beneficiary as "primary  Barbara Keegan." No provision is made for a secondary beneficiary in the body of the policy. From this fact and the absence of a secondary beneficiary in the changed application it is argued that there was no secondary beneficiary and that the proceeds of insurance should be available to one or the other estates.
But this argument cannot be accepted. The policy itself provides; "This policy and the application for it, a copy of which is attached to and made a part of the policy, constitute the entire contract between the parties." It is a familiar doctrine that even without such a clause in a contract, several documents forming essentially a single transaction should be construed together. Mayfair Farms Holding Corp. v. Kruvant Enterprises Co., 64 N.J. Super. 465, 474 (App. Div. 1960), vacated on other grounds 35 N.J. 558 (1961). The court observes that the contingency of the primary beneficiary predeceasing the insured is not remote. *292 Surely an insured on life coverage where, absent cancellation, payment is a certainty ordinarily would designate a secondary beneficiary. The proceeds of the insurance from the Manufacturer's policy is therefore payable to the surviving children in equal shares since in the designation of all the children born of the marriage no provision is made for the circumstance of a child dying simultaneously with his parent. See N.J.S.A. 3A:5-4. Pursuant to N.J.S.A. 17B:24-6(a) the creditors have no claim on the proceeds. While that section does not insulate the amount of premiums paid with intent to defraud creditors, no proof of such intent is here shown with respect to any payment of premiums. Since there was a secondary beneficiary designated, the court need not reach the question of whether the survivorship statement in the will or trust could affect the insurance proceeds. The designation of a secondary beneficiary requires a finding that, regardless of the general language in the will or trust, the intent of decedent for purposes of the insurance was that Barbara Ann Keegan not be treated as having survived Edward J. Keegan.
The final issue is the ownership of the proceeds of the policies of insurance which funded the trust. It is argued that the broad powers of control and ownership reserved in decedent bring the proceeds of the insurance under the rule of In re Kovalyshyn, 136 N.J. Super. 40 (Cty. Ct. 1975). But there the court merely held that a settlor of a trust in mutual funds who, in effect, was the beneficiary with complete inter vivos control, could not insulate the asset from his creditors upon his death. But equal control over life insurance policies does not make such policies equivalent to a mutual fund. The value in a mutual fund exists during the life of the owner. The proceeds of the insurance policies were created by death. Further, the rights of the creditors are within legislative control. Since N.J.S.A. 17B:24-6 exempts from creditors' claims on death the proceeds of a policy where the insured is the owner, there is no logical reason why the establishment of a trust *293 to hold the policies should lead to a different result. Whatever powers decedent had over the policies within the trust, he would have had no less as owner. Thus, the proceeds of the insurance policies within the trust are subject to the trust and are not subject to claims of creditors of decedent. The trustee having renounced, the court on appropriate motion will designate a successor.
In summary, the court holds: (1) the proceeds of the sale of the real estate and of bank accounts in their joint names with survivorship rights are to be allocated equally to the estates of Edward J. Keegan and Barbara Ann Keegan; (2) the proceeds of the $150,000 life insurance policy from Manufacturers Life Insurance Company are to be divided equally among the six surviving children free of claims of creditors of their parents, and (3) the proceeds of the policies within the trust are subject to the trust free of claims of creditors of the parents. Further probate proceedings and accountings should be in the Hunterdon County Court. See R. 4:86-1; N.J.S.A. 3A:24-39. Payment of life insurance proceeds to the minor surviving children may not be made until a guardian is appointed. There being no just reason for delay, a final judgment shall be entered at this time. R. 4:42-2.