563 So.2d 328 (1990)
Debra RENDA, Tutrix of the Minor, Hope Elizabeth Nichols, Plaintiff-Appellant,
v.
Travis W. BROWN, et al., Defendants-Appellees.
No. 88-1324.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
Writ Denied September 28, 1990.
Jack Owens, Harrisonburg, for plaintiff-appellant.
Norman Magee, Ferriday, Provosty, Sadler, Wm. H. DeLaunay, Jr., Stafford, Stewart, Larry A. Stewart, Alexandria, David H. Nelson, Monroe, Gold, Weems, Dee *329 Drell, Alexandria, Mark Foster, Minden, for defendants-appellees.
Before GUIDRY, DOUCET and KING, JJ.
KING, Judge.
This appeal presents for review the correctness of the granting of motions for summary judgment by the trial court and the denial of a motion for a new trial.
During the early morning hours of August 17, 1985, Travis Brown (hereinafter Travis) was driving a Chevrolet pickup truck (hereinafter the Chevrolet truck) which struck and killed Lucky Ellis (hereinafter Ellis). The tutrix of Hope Elizabeth Nichols, the natural daughter of Ellis (hereinafter plaintiff), brought a wrongful death action against the Insurance Company of North America (hereinafter I.N.A.), National Union Fire Insurance Company (hereinafter N.U.I.), and General Agents Insurance Company of America, Inc. (hereinafter G.A.I.), as well as other parties. Each of these three insurance companies filed motions for summary judgment which were granted by the trial court. Plaintiff filed a motion for new trial asking the trial judge to set aside the summary judgment rendered in favor of G.A.I. and the motion for a new trial was denied. Plaintiff timely appeals the granting of these summary judgments and the denial of her motion for a new trial. We affirm.

FACTS
Travis, who was driving the Chevrolet truck that struck Ellis and resulted in his death, is the son of Lannie Paul Brown and Nancy Brown. The Browns own and operate two businesses: a corporation known as Miss-Lou Truck Parts, Inc. and an unincorporated sole proprietorship known as Brown's Auto Ranch. Miss-Lou Truck Parts, Inc. is managed by Wayne Brown, the brother of Travis and the son of Lannie Brown. Brown's Auto Ranch is managed by Lannie Brown.
The truck involved in the accident was a 1984 Chevrolet pickup truck owned by and titled in the name of Brown's Auto Ranch, but the Chevrolet truck was, at least to a large extent, used by Lannie Brown as his personal vehicle. Travis, the driver of the Chevrolet truck at the time of the accident, was driving the Chevrolet truck with the permission of his father, Lannie Brown.
I.N.A., N.U.I., and G.A.I. all issued insurance policies which plaintiff argues provide coverage for the claim sued on. The trial court granted summary judgments in favor of I.N.A., N.U.I., and G.A.I. Plaintiff appeals each of these judgments, as well as the denial of her motion for a new trial from the judgment granting G.A.I.'s motion for summary judgment.

LAW
La.C.C.P. Art. 966 provides that a motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966(B). The mover has the burden of showing that there is no genuine issue of material fact in dispute. This burden is carried when the mover meets a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Indus. Sand and Abrasives, Inc. v. L. & N.R. Co., 427 So.2d 1152 (La.1983), and cases cited therein. Furthermore, any reasonable doubt as to the existence of a genuine issue of material fact must be resolved in favor of trial on the merits. Indus. Sand and Abrasives, Inc. v. L. & N.R. Co., supra, and cases cited therein. The function of the court on a motion for summary judgment is not to determine the merits but to determine whether there is a genuine issue of material fact. Kinney v. Hutchinson, 449 So.2d 696 (La.App. 5 Cir.1984), writ not considered, 452 So.2d 170 (La.1984). See generally, Laufer v. Touro Infirmary, 334 So.2d 541 (La.App. 4 Cir.1976). Applying this legal standard we find that all the motions for summary judgment were properly granted. Each of the defendants' motions *330 for summary judgment will be separately discussed.

I.N.A.'S MOTION FOR SUMMARY JUDGMENT
I.N.A.'s policy was issued to "Lanie Brown dba/Miss-Lou Truck Parts, Inc. & Brown's Auto Ranch" and is a "business auto policy" providing coverage only for specified vehicles described in the policy as covered vehicles. The Chevrolet truck was not described and, therefore, there is no coverage for it.
The declaration page of the I.N.A. policy provides:
"ITEM TWO-SCHEDULE OF COVERAGES AND COVERED AUTOS: This policy provides only those coverages where a charge is shown in the `Premium' column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from ITEM THREE next to the name of the coverage. Entry in the `Covered Autos' column of one or more of the symbols from ITEM THREE shows which autos are covered autos."
Immediately under this explanation are variously marked columns. In the "Covered Autos" column is listed the symbol 7 which is explained in Item Three on the declaration page and in the description on the reverse side as follows:
"ITEM THREE(See other side for Description of Covered Auto Designation Symbols).
7 = SPECIFICALLY DESCRIBED AUTOS. Only those autos described in ITEM FOUR for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to any power unit described in ITEM FOUR)."
The symbol "7" is defined as "specifically described autos," meaning those described in Item Four on the declaration page. Item Four on the declaration page refers to a schedule. The attached schedule for Item Four specifies that it represents the "SCHEDULE OF COVERED AUTOS YOU OWN." Described and listed on the schedule are three vehicles, none of which was the Chevrolet truck involved in the accident.
The meaning and use of numeral symbols to identify covered vehicles is further stated and explained in the policy as follows:
"PART IIWHICH AUTOS ARE COVERED AUTOS
A. ITEM TWO of the declarations shows the autos that are covered autos for each of your coverages. The numerical symbols explained in ITEM THREE of the declaration describe which autos are covered autos. The symbols entered next to a coverage designate the only autos that are covered autos.
* * * * * *
PART IVLIABILITY INSURANCE
A. WE WILL PAY
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."
Since I.N.A.'s policy only covers the specifically described or scheduled vehicles, and the Chevrolet truck was not listed, it is not covered by I.N.A.'s policy. There is no issue of material fact. It is not disputed that the Chevrolet truck was not specifically described or listed, and the policy is clear.
The only other provision of I.N.A.'s policy that could possibly provide coverage for the Chevrolet truck is found in Part II(B)(2) of the policy which reads:
"B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS.
* * * * * *
2. But, if symbol "7" is entered next to a coverage in ITEM TWO, an auto you acquire will be a covered auto for that coverage only if:
a. We already insure all autos that you own for that coverage or it replaces *331 an auto you previously owned that had that coverage; and
b. You tell us within 30 days after you acquire it that you want us to insure it for that coverage."
There is no evidence or allegations that the Chevrolet truck was a replacement auto or that I.N.A. insured all vehicles owned by the named insured. Nevertheless, it is undisputed that the Chevrolet truck was owned by Brown's Auto Ranch for approximately one year before the accident. The thirty day notice provision after acquisition of a vehicle would preclude coverage of the Chevrolet truck. There is no disputed fact in this regard.
Plaintiff also argues that Travis was an agent of Lannie Brown or Brown's Auto Ranch and, therefore, was an insured under the definition of "insured" in the policy. Plaintiff contends that whether or not Travis was an agent is a question of material fact to be decided by the trier of fact. However, whether or not Travis was an agent of Lannie Brown or Brown's Auto Ranch (we note that Travis was an employee of Brown's Auto Ranch) and an "insured" under the policy is irrelevant and, therefore, not a material fact in dispute. It is clear that I.N.A.'s policy covers specifically described and listed vehicles regardless of who was the driver. If the Chevrolet truck was not an insured vehicle under the terms of the policy, it makes no difference who was driving or whether or not the driver was the agent of another. Hillman v. Grace, 498 So.2d 1108 (La.App. 3 Cir. 1986).
As the trial judge stated in his reasons for judgment, "Part two of the policy indicate `which autos are covered.' Clearly, under the terms and conditions of part two of the policy, the pickup truck in question is not covered under the policy and Motion for Summary Judgment is granted in favor of INA." The trial court was not manifestly in error or clearly wrong in finding that there was no genuine issue of material fact as to I.N.A. not insuring the Chevrolet truck. For these reasons, we find that the trial court's granting of I.N.A.'s motion for summary judgment was correct.

N.U.I.'S MOTION FOR SUMMARY JUDGMENT
N.U.I. issued a "business auto policy" of insurance to "Wayne and Lanny Brown, d/b/a Miss-Lou Truck Parts, Inc. and Brown's Auto Ranch." N.U.I.'s policy is virtually identical to, and organized in the same manner, as the I.N.A. policy previously discussed supra. The policy provided liability insurance coverage, but the coverage was restricted to only those vehicles that had been described and listed in the policy. Therefore, we see no reason to further discuss the policy in detail. N.U. I.'s policy only provided coverage for specifically described and scheduled vehicles. N.U.I.'s policy had a schedule showing which vehicles were covered. Three tractors and four trailers were described and scheduled and none were the Chevrolet truck. The N.U.I. policy also shows that a premium was only paid for seven vehicles and none were the Chevrolet truck. Hence, for the same reasons discussed with regard to I.N.A.'s policy, supra, there is no genuine issue of material fact. For these reasons, we find that N.U.I.'s motion for summary judgment was properly granted by the trial court.

G.A.I.'S MOTION FOR SUMMARY JUDGMENT
G.A.I. issued a "garage insurance" policy of insurance to "Wayne and Lannie Brown d/b/a Miss-Lou Truck Parts, Inc. & Brown's Auto Ranch." Item 2 of this garage insurance policy sets out that insurance coverage is afforded:
"(a) All automobiles owned by the named insured [that] are used principally in garage operations of the named insured, except automobiles (1) assigned to the named insured, a partner therein or a member thereof, or an executive officer thereof, or, if a resident of the same household, the spouse of any of them or (2) furnished to any person or organization named in paragraph (b) below
(b) Automobiles owned by the named insured are furnished to the following persons *332 or organizations of the named insured for their regular use for other business purposes or for non-business purposes ..."
No persons or organizations are listed as being furnished vehicles under Item 2(b) of the policy.
G.A.I.'s policy also has an endorsement which states that it modified these provisions to provide coverage for certain persons furnished vehicles as set forth in the endorsement. The endorsement provided a furnished automobile coverage which reads:
"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
GARAGE INSURANCE COVERAGE PART.

* * *
FURNISHED AUTOMOBILES EXCLUSION: It is hereby agreed and understood that Bodily Injury and Property Damage coverage for those Automobiles owned by the Named Insured and furnished for the regular use of Owners, Partners, Executive Officers, Employees, spouses, children or relatives of the foregoing or any other person or organization is limited to the following scheduled persons or organizations and the drivers listed below

 SCHEDULE OF FURNISHED AUTOMOBILES
 Automobile No of Title or Other Drivers of * * *
 Furnished To Units Position Furnished Automobiles
 Wayne Brown 1 Owner Sharon Brown
 Lannie C. Brown 1 Owner Nancy Brown

A. Coverage is automatically extended to additional furnished automobiles and drivers that arise during the policy period as long as the Named Insured notifies the Company within 30 days following the actual change and proper premium is charged thereto.
B. Coverage shall extend to the occasional use of a Furnished Automobile by a non-scheduled driver for emergency purposes as long as the non-scheduled driver has permission of a scheduled driver and the actual use is within the scope of such permission." (Column omitted.)
The Chevrolet truck was owned by and was titled in the name of Brown's Auto Ranch. The named insured in G.A.I.'s policy is "Wayne & Lannie Brown d/b/a Miss Lou Truck Parts, Inc. & Brown's Auto Ranch." Therefore, under the language of Item 2 of the policy, for G.A.I.'s policy to cover the Chevrolet truck, the Chevrolet truck must have been principally used in the garage operations of Brown's Auto Ranch, and it must not have been furnished or assigned to those listed in Item 2(a)(1) or furnished to those listed in Item 2(b)(2). However, the endorsement modified the coverage under the policy to provide coverage for autos "owned by the Named Insured [Brown's Auto Ranch] and furnished for the regular use of Owners. Employees, spouses, children ..." but was limited to the "scheduled persons or organizations and the drivers listed ..."
To determine whether there is coverage under these provisions, therefore, several questions are relevant. First, was the Chevrolet truck principally used in garage operations?
If we assume it was principally used in garage operations, coverage is limited, under Coverage G, Bodily Injury Liability, *333 and H, Property Damage Liability, of the policy, to
"[A]ll sums which the insured shall become legally obligated to pay as damage because of ... bodily injury or ... property damage ... caused by an occurrence and arising out of garage operations..."
There is no dispute as to the fact that Travis was not using the Chevrolet truck for garage operations at the time of the accident. Lannie Brown stated in his deposition that Travis asked his permission to use the truck on the night of the accident to bring a friend somewhere. Lannie Brown further testified that Travis was not on any business of Brown's Auto Ranch that night, though Travis was an employee of Brown's Auto Ranch. Travis did, previous to the accident, pull another vehicle out of a mud hole. He called and received his father's permission to do so. However, no compensation was received for this act. It appears to have been a favor, and the Chevrolet truck was not equipped as a wrecker. It is quite clear that the accident did not result from an occurrence arising out of garage operations, therefore, the accident is not covered under the garage operations provision of the policy.
Nevertheless, G.A.I.'s policy does provide coverage under the endorsement for certain furnished vehicles. The relevant question here is whether the Chevrolet truck was furnished for the "regular use" of an owner, partner, etc.... as listed in the endorsement.
It is clear from the depositions filed with the motion for summary judgment that Lannie Brown used the Chevrolet truck for his regular use. Lannie Brown stated in his deposition that the Chevrolet truck was furnished and was basically used as his personal vehicle. Nancy brown, Lannie's wife, also stated that it was his personal vehicle. Sharon Brown, Lannie Brown's daughter, also indicated that the Chevrolet truck was her father's and that he used it for personal use. It is also clear that the Chevrolet truck was occasionally used in the business of Brown's Auto Ranch. Lannie, Nancy, and Sharon Brown all gave testimony in their depositions to that effect.
However, whether or not the Chevrolet truck was furnished by Brown's Auto Ranch to Lannie Brown for his regular use is not an issue of material fact because, even if it was furnished for his regular use, Travis was not a listed driver under the terms of the endorsement; therefore, the policy would not provide coverage to Travis because of the terms of the endorsement. Under the furnished auto exclusion, for a regularly furnished automobile to be covered under the policy it must have been driven by only Wayne, Lannie, Sharon or Nancy Brown.
We also note that the Chevrolet truck was approximately a year old at the time of the accident and, therefore, the thirty day provision in this exclusion for newly acquired vehicles would not apply, nor would the provision extending coverage to non-listed drivers driving a furnished vehicle for emergency purposes. There is no evidence, and no suggestion, that the Chevrolet truck was furnished for an emergency at the time of this accident.
We find no genuine issue of material fact that would change the outcome of this case. First, if the Chevrolet truck was principally used in garage operations and covered under Item 2 because it was not an assigned vehicle under Item 2(a)(1) or a furnished vehicle under Item 2(b), there is no coverage because the accident did not arise in garage operations. This fact is quite clear and there is no dispute that Travis was using the Chevrolet truck for his personal use on the evening of the accident.
Second, whether the Chevrolet truck was a regularly furnished vehicle covered under the terms of the endorsement would also be irrelevant since, whether it was or was not regularly furnished, Travis was not a listed driver on the endorsement and coverage would not extend to the Chevrolet truck while being driven by Travis.
*334 Third, if the Chevrolet truck was not used principally in the garage operations of the named insured, it clearly is not covered, and whether or not it would be covered under the regularly furnished vehicle coverage, even though it was not used principally in garage operations, would be irrelevant, as pointed out above, since the Chevrolet truck was being driven by Travis, an unlisted driver.
Lastly, we note that the endorsement to G.A.I.'s policy also includes a Service Vehicle Exclusion which reads:
"SERVICE VEHICLES EXCLUSION: It is hereby agreed and understood that Bodily
Injury and Property Damage coverage for Service Vehicles used in Garage Operations
owned by the Named Insured is limited to the following scheduled automobiles:
 SCHEDULE OF SERVICE VEHICLES
 Year Manufacture Description Use
 1975 Kenworth Wrecker Wrecker S# 1845 Service
 1977 Ford 2 Ton Truck S# 0355 Service
A. Coverage is automatically extended to newly acquired Service Vehicles during the
policy period so long as the Named Insured notifies the Company within 30 days of such
acquisition and proper premium is charged therefor."
The Chevrolet truck is not listed and would, therefore, not be covered under this provision regardless of whether it was being used as a "service" vehicle at the time of the accident.
For these reasons, we find that the trial court was correct in granting G.A.I.'s motion for summary judgment. The trial court was, therefore, also correct in denying plaintiff's motion for new trial since the judgment on G.A.I.'s motion for summary judgment was not contrary to the law and evidence. See La.C.C.P. Arts. 1972, 1973.
For the foregoing reasons, the judgments granting the motions for summary judgment in favor of the Insurance Company of North America, the National Union Fire Insurance Company, and General Agents Insurance Company of America, Inc., and denying plaintiff's motion for new trial are affirmed and the judgments rendered against plaintiff, dismissing her suit as to these defendants, with prejudice, at her cost is correct. All costs of the appellate court are taxed to plaintiff-appellant.
AFFIRMED.