834 F.2d 1154
 James M. BERGER, Appellant in 86-5863,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation of
the State of Maryland, Appellant in 86-5864,
and
Fitchburg Mutual Insurance Company, a Corporation of
Massachusetts, Appellee.
 Nos. 86-5863, 86-5864.
 United States Court of Appeals,
Third Circuit.
 Argued July 14, 1987.
Decided Nov. 30, 1987.
 
 Francis J. Orlando (argued), Brady & Orlando, P.C., Haddonfield, N.J., for appellant in No. 86-5863, James M. Berger.
 Michael J. O'Mara (argued), Martin, Crawshaw & Mayfield, Westmont, N.J., for appellant in No. 86-5864, U.S. Fidelity & Guar. Co.
 Anthony P. Pasquarelli, Methfessel & Werbel, Rahway, N.J., for appellee Fitchburg Mut. Ins. Co.
 Before: HIGGINBOTHAM, BECKER and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 These appeals are from grants of summary judgment in a declaratory judgment action arising out of an insurance coverage dispute between James M. Berger, an injured guest in a motor vehicle accident, and two carriers issuing policies to the owner of the vehicle in which Berger was riding and to the owner's business. The appeals involve questions about four different insurance policies: homeowner's, personal auto, business auto, and comprehensive general liability policies. We must first decide whether the district court properly granted partial summary judgment in favor of Fitchburg Mutual Insurance Company on the ground that an automobile exclusion in its homeowner's policy precluded recovery. Second, we must consider whether the district court properly granted partial summary judgment in favor of Berger against United States Fidelity & Guaranty Company (USF & G), holding that payments under a personal auto policy do not apply toward the maximum pay-out of a business auto policy issued by USF & G, even though the business auto policy contains a clause limiting the aggregate payout from "two or more policies" of the insured. Third, we must review the district court's grant of partial summary judgment in favor of USF & G on the ground that the exclusion in USF & G's comprehensive general liability policy for auto accidents of insureds in the course of their employment applies in this case. Fourth, we must decide whether a clause limiting liability in the USF & G business auto policy applies to the USF & G comprehensive general liability policy negotiated at the same time between the same parties.
 
 
 2
 We affirm the judgment in favor of Fitchburg because we agree with the district court's holding that the homeowner's policy does not apply to this accident. Turning to the claims against USF & G, we affirm the district court's determination that because the insured was not the same legal entity in both the personal and the business insurance policies, payments from one policy cannot count toward the maximum pay-out of the other. However, we reverse the district court's declaration as to the applicability of the exclusion in the comprehensive general liability policy, because we find that genuine factual disputes exist about whether the driver acted within the scope of his employment and about whether the work on the vehicle constituted rebuilding or mere maintenance. Finally, we reject USF & G's argument that its business auto and comprehensive general liability policies, each of which contain integration clauses, were intended to be read together, and that the limiting term in the business auto policy controls recovery under the separate comprehensive general liability policy. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 This case arose out of an automobile collision on November 4, 1982. Plaintiff-appellant James Berger was a passenger in a rebuilt 1966 Plymouth Barracuda operated by Berger's friend Craig J. Buffington (Craig) and owned by Craig F. Buffington (Mr. Buffington), Craig's father. The collision occurred when the Buffington vehicle crossed over into on-coming traffic and hit another car head-on. Because the seat belts had not been reinstalled in the car during the rebuilding, Berger crashed through the front passenger door and sustained a brain stem injury which has significantly reduced his cognitive functioning. Berger has incurred large medical expenses and faces additional large medical expenses in the future, as well as a huge projected loss of future earnings and earning power. Mr. Buffington purchased the Barracuda in 1968 but did no work on it until approximately one month before the accident. Actually, Craig did most of the work on the premises of Atco Pump and Equipment Company, a general partnership between Mr. Buffington and Wolfgang Schmitter, outside Atco's normal business hours but using Atco's tools and equipment. Mr. Buffington made frequent inspections of the work. At the time of the collision, in addition to the missing seat belts, the speedometer was not connected. Berger testified at trial that Craig had told him that Mr. Buffington had asked Craig to pick up a part for Atco Pump on the evening of the accident, an allegation that the Buffingtons vigorously denied.
 
 
 4
 Berger instituted suit in New Jersey state court, alleging that the Buffingtons were negligent in rebuilding the Barracuda. Berger also charged Mr. Buffington with negligent entrustment of the vehicle to Craig. Berger settled with all defendants on the underlying tort claims, but disagreements remained as to the applicability of certain insurance policies: (1) a homeowner's policy issued by Fitchburg to Mr. Buffington; (2) a personal auto policy issued by USF & G to Mr. Buffington with $15,000 to $30,000 coverage; (3) a business auto policy issued by USF & G to Atco Pump with $100,000 in coverage which included a "two or more policies" clause limiting recovery to the maximum pay-out under any one policy; and (4) a comprehensive general liability policy issued to Atco Pump by USF & G with $100,000 in coverage.
 
 
 5
 The settlement provided that USF & G would pay $15,000 to Berger from the personal auto policy and $84,000 from the business auto policy. The parties further agreed to enter into a declaratory judgment action in New Jersey state court to determine the applicability of the USF & G comprehensive general liability policy and the validity of the "two or more policies" set-off provision of the USF & G business auto policy. A driver of one of the other vehicles involved in the accident, who is also a claimant under the USF & G policies, collected $16,000 from USF & G, of which $15,000 was paid pursuant to the personal auto policy and $1,000 pursuant to the business auto policy. USF & G has thus paid a total of $115,000 to Berger and the other claimant, although it claims that its total fund of insurance available for all claims regarding the accident is only $100,000.
 
 
 6
 Berger also included Fitchburg in the declaratory judgment action, seeking to establish a right to recovery under the Fitchburg homeowner's policy on the theory that, if USF & G's general liability policy did not apply, the Buffingtons would be afforded coverage under the homeowner's policy or, in the alternative, that Mr. Buffington would be afforded coverage for his alleged negligent entrustment of the vehicle.
 
 
 7
 Defendants removed the action to the district court for the District of New Jersey because of diversity of citizenship. On cross-motions for summary judgment, the district court granted Fitchburg's motion, determining that the homeowner's policy issued by it excluded coverage for the collision. The court granted Berger's motion in part, determining that the "two or more policies" clause in the business auto policy issued by USF & G did not apply to the personal auto policy coverage issued by USF & G. The court granted USF & G's motion in part, determining that the comprehensive general liability policy issued to Atco Pump excluded coverage for the collision. Because it found that USF & G's comprehensive general liability policy did not apply, the district court did not reach the question whether the "two or more policies" clause of USF & G's business auto policy applied to the general comprehensive liability policy. Under the terms of the court's order, Berger received another $15,000 under the business auto policy.
 
 
 8
 Berger has appealed from the portion of the district court's ruling determining that the Fitchburg homeowner's policy and USF & G's comprehensive general policy contained valid exclusions from coverage. USF & G has cross-appealed from the court's determination that the "two or more policies" clause in the business auto policy did not apply to the personal auto policy coverage. It also argues that, even if the exclusion in the general liability policy did not apply, Berger is prohibited from any further recovery from USF & G because of the "two or more policies" clause in the business auto policy.
 
 II. THE FITCHBURG HOMEOWNER POLICY
 
 9
 The Fitchburg homeowners policy contains an exclusion for injuries arising out of the ownership, operation or maintenance of an auto owned or operated by an insured. The policy contains the following exclusion:
 
 
 10
 Coverage E- Personal Liability and Coverage F- Medical Payments to Others do not apply to bodily injury or property damage:
 
 
 11
 * * *e. arising out of the ownership, maintenance, use loading or unloading of:
 
 
 12
 * * *
 
 
 13
 (2) a motor vehicle owned or operated by, or rented or loaned to any insured;
 
 
 14
 As defined in the policy, Craig is an "insured."[1] This case falls squarely within the second exception because it involves an accident arising out of the use of a motor vehicle both owned and operated by an insured.
 
 
 15
 In arguing that he is not excluded, Berger relies on McDonald v. Home Insurance Co., 97 N.J.Super. 501, 235 A.2d 480 (App.Div.1967). In McDonald, the court held that a homeowner's policy with a similar exclusion required the insurer to defend the policy owners in a suit against them as parents of a minor driver who had allegedly caused the auto accident. As the district court correctly observed, McDonald is clearly distinguishable. McDonald involved a car owned by the minor child, not the parents, and under the policy at issue in McDonald the son of the named insured was not himself an "insured." Because in our case the car belonged to Mr. Buffington, not his son Craig, and Craig clearly qualifies as an insured, the district court correctly held that the Fitchburg homeowner's policy excludes recovery in this case.
 
 
 16
 III. EFFECT OF THE BUSINESS AUTO POLICY'S "TWO OR MORE
 
 POLICIES" CLAUSE ON THE PERSONAL AUTO POLICY
 
 17
 USF & G contends that, having paid $115,000 under the business auto and personal auto policies, it has exhausted its liability stemming from the accident. It argues that a clause in the business auto policy that limits the maximum pay-out of USF & G to the largest pay-out of any one policy, in this case $100,000, prohibits Berger's recovery under the personal auto policy.[2] The district court held that payments made under the personal USF & G auto policy do not count toward the $100,000 maximum under the "two or more policies" clause of the business auto policy. It did so on the ground that the "two or more policies" clause of the business auto policy by its terms refers and applies only to policies issued to the partnership enterprise, not to the partners as individuals. The clause applies to "any other policy issued to you." Under the business auto policy, "you" means "the person or organization shown as the named insured."[3] (emphasis added.) We agree with the district court that, on the basis of the definition and declaration sections of the business auto policy, the term "you" in the "two or more policies clause" refers to the partnership and not Mr. Buffington as an individual. Therefore, the exemption in the business auto plan cannot apply to Berger's personal auto policy. We thus affirm the district court's judgment insofar as it declined to apply payments made under the personal auto policy toward the $100,000 maximum of the business policy.
 
 IV. THE COMPREHENSIVE GENERAL POLICY
 
 18
 The district court held that an exclusion in the partnership's comprehensive general liability policy prevented Berger from recovering under that policy. The relevant exclusion reads:
 
 I. This insurance does not apply:
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
 
 
 22
 1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
 
 
 23
 2) any other automobile or aircraft operated by any person in the course of his employment by any insured.
 
 
 24
 The court found that exclusion I(b)(2) applied and hence barred Berger's recovery under USF & G's comprehensive general liability policy. In considering the application of this exclusion, however, we find that summary judgment was unwarranted because genuine questions of material fact still exist. Fed.R.Civ.P. 56(c). See First National Bank of Pennsylvania v. The Lincoln National Life Insurance Co., 824 F.2d 277 (3d Cir.1987); Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 
 25
 First, the parties dispute whether the injury arose out of the "maintenance, operation or use of an automobile owned or operated by an insured." USF & G argues that Berger's theory of negligent rebuilding forecloses recovery because "maintenance" is specifically excluded as a basis of liability. Berger responds that at some point repairs are so extensive that they transcend mere "maintenance" and reach the level of "rebuilding." The district court has not made any findings as to the extent of the work on the car. We note that New Jersey law has defined the term "maintenance" in interpreting identical language in American Home Assurance Company v. Hartford Insurance Company, 190 N.J.Super. 477, 464 A.2d 1128, 1134 (App.Div.1983). In that case the court cited Black's Law Dictionary, which defines maintenance as " 'acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition' Black's Law Dictionary 859 (5th ed. 1979)." Depending on facts found in the district court, this definition might not encompass the Buffingtons' work on the Barracuda.
 
 
 26
 More important, there is a factual dispute over the question whether Craig acted "in the course of his employment" by Atco. In his amended complaint in the underlying tort action, Berger alleged that Craig was in the course of his employment when the accident occurred. There the defendants denied this allegation. The question of agency posed by exclusion I(b)(2) was never resolved by findings of fact, in either the underlying tort action or in this case. Thus, summary judgment should not have been granted.
 
 
 27
 USF & G also invokes the I(b)(1) exclusion with respect to Craig and Mr. Buffington. First, USF & G argues that section I(b)(1) excludes coverage because Mr. Buffington is an "insured" who owns the car. Even though the policy caption lists Mr. Buffington, the policy does not insure him as an individual. The actual named insured in the declarations is "Wolfgang Schmitter, Craig Buffington T/A Atco Pump & Equipment Co." The definition section of the policy, Section II(b), defines a person or entity as an insured
 
 
 28
 if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such. [emphasis added]
 
 
 29
 We agree with the district court that the term insured clearly refers to the partnership. Therefore, the plain language of the policy prohibits applying the I(b)(1) exception to Mr. Buffington.
 
 
 30
 The I(b)(1) exception seems more applicable to Craig. Craig could qualify as an "insured," and thus activate the I(b)(1) exclusion, if he fell within section II(e)(i). Section II(e)(i) provides:
 
 II. Persons Insured
 
 31
 Each of the following is an insured ...
 
 
 32
 (e) with respect to operation, for the purpose of location upon a public highway, of mobile equipment....
 
 
 33
 (i) an employee of the named insured, while operating any such equipment in the course of his employment.
 
 
 34
 Thus, if Craig were found to be an employee of Atco who was operating the car in the course of his employment, he would be an insured under section II(e)(i). This would require two findings: the existence of the employment relation itself and the determination that his actions were within the scope of his employment. As with the I(b)(2) exception, these findings were never made.
 
 
 35
 In sum, the applicability of either exclusionary clause depends on findings concerning the employment relation and scope of employment and determination of the "maintenance" versus "rebuilding" question. Absent such essential findings, the district court improperly granted summary judgment.
 
 
 36
 V. EFFECT OF THE BUSINESS AUTO POLICY'S "TWO OR MORE
 
 POLICIES CLAUSE" ON THE COMPREHENSIVE GENERAL
 LIABILITY POLICY
 
 37
 The most difficult issue concerning USF & G's business auto policy is the application of its "two or more policies clause" to USF & G's comprehensive general liability policy issued to Atco Pump. USF & G argues that the "two or more policies" clause found in the business auto policy prevents Berger's recovery under the comprehensive general liability policy. That clause limits USF & G's liability under all policies issued to the partnership for any one accident to the highest coverage available under any single policy. USF & G contends that the comprehensive general and business auto policies must therefore be read as a package that provides a maximum of $100,000 coverage. It emphasizes that the policies were written simultaneously for the same named insured, by the same agent, to cover the same period.
 
 
 38
 Berger argues that, because the comprehensive general policy is an integrated agreement that lacks the "two or more policies clause," it cannot be modified by such a clause that appears only in the business auto policy. Berger points to the separate nature of each policy. Each contains a standard integration clause,[4] each contains a clause stating that the maximum liability under the policy shall be that stated in the declarations section, and the policies list their premiums separately.
 
 
 39
 Because only the business auto policy contains the "two or more policies" clause we must determine whether the business auto policy modified the general liability policy. We follow New Jersey law, which interprets insurance policies according to general contract principles. See Prather v. American Motorists Fire Insurance Co., 2 N.J. 496, 67 A.2d 135 (1949); Travelers Insurance Co. v. Transport of New Jersey, 204 N.J.Super. 63, 71, 497 A.2d 900, 904 (Ch.Div.1985) (citing Smith v. Metropolitan Life Insurance Co., 29 N.J.Super. 478, 102 A.2d 797 (App.Div.1954)).
 
 
 40
 USF & G relies on Lawrence v. Tandy & Allen, 14 N.J. 1, 100 A.2d 891 (1953), the leading New Jersey case concerning modification of one agreement by another. There a purchaser of a partially completed house insisted on a written guarantee that the basement would be dry. The developer refused to include a guarantee in the form contract, but signed a separate memorandum of intent. At closing, the developer tendered a deed that contained no commitment concerning the basement's condition, and again the purchaser refused to proceed without the promised guarantee. The developer proffered a written guarantee that the basement would remain dry for one year. The buyer then accepted the guarantee and the deed, and paid for the property. When water continued to accumulate the developer advised the buyer that he would not honor the guarantee, and the buyer sued.
 
 
 41
 The developer argued on appeal that the guarantee was nudum pactum because it was unsupported by consideration and "that matters extrinsic to a complete written instrument cannot have the force or effect of modifying the document." Lawrence, 14 N.J. at 6, 100 A.2d at 893. The court rejected this argument, citing the proposition that when two agreements are made simultaneously and refer to the same subject matter, they must be read together. Lawrence held that the execution of the deed was consideration for the guarantee and that "[t]he writing alone is not 'wholly and intrinsically self-determinative of the parties' intent to make it the sole memorial.' " Lawrence, 14 N.J. at 8, 100 A.2d at 894 (citing Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 96 A.2d 652 (1953)). USF & G cites Lawrence for the proposition that
 
 
 42
 because the policies derive from one transaction relating to the insured, they should be read together as a single instrument, and the recitals in one may be explained, amplified or limited by reference to the other.
 
 
 43
 The Lawrence rule is frequently cited, but it has been narrowed by New Jersey courts in two respects. First, the rule has been limited to situations in which clear evidence indicates that the parties intended the agreements to be read together. LaPorte v. Bott, 173 N.J.Super. 590, 593, 414 A.2d 1363, 1364 (App.Div.1980) (parties intended contracts to be read as an "integrated tripartite arrangement"); M.N. Axinn Co. v. Gibraltor Development, Inc., 45 N.J.Super. 523, 533-34, 133 A.2d 341, 346 (App.Div.1957) (distinguishing Lawrence on the basis of parties' intent).
 
 
 44
 Only where the documentary proof may be fairly read to indicate that all parties agreed upon the modification of one document by another will New Jersey courts apply Lawrence. See Mayfair Farms Holding Corp. v. Kruvant Enterprises Co., 64 N.J.Super. 465, 166 A.2d 585, 590 (App.Div.1960) (court recognized modification of one document by another because of "inescapable" conclusions as to the intentions of the parties), vacated on other grounds, 35 N.J. 558, 173 A.2d 905 (1961); Keegan v. Estate of Keegan, 157 N.J.Super. 279, 384 A.2d 913, 919 (Ch.Div.1978) (explicit language referring to and incorporating other document); General Electric Credit Corp. v. Castiglione, 142 N.J.Super. 90, 360 A.2d 418, 424 (Law Div.1976) (lease-purchase agreement read in conjunction with two guarantees that each "refer to the lease-purchase agreement and specifically state that the purpose of execution is to induce plaintiff to enter into this [lease-purchase] agreement").
 
 
 45
 In Van Orman v. American Insurance Co., 680 F.2d 301 (3d Cir.1982), this court, applying New Jersey law, emphasized the importance of the intentions of the parties and concentrated on the existence of an integration clause in the documents. In Van Orman, the Court did not read two documents, a pension plan and a plan summary booklet for the employees, as one. In refusing to construe the booklet as modifying the plan, the court recognized the rule in Lawrence but held that specific language of integration superseded the Lawrence doctrine. Id. at 306. The fact pattern of Van Orman is distinguishable because in Van Orman both documents specifically indicated that one superseded the other. Nevertheless, Van Orman 's rule of looking to language that indicates a document must be read on its own, without reference to other documents--even those executed contemporaneously--applies in this case.
 
 
 46
 Second, the New Jersey courts have only applied Lawrence in cases where the agreements seemed to reflect equal bargaining power between adequately represented parties who negotiated the terms of the contract. In County of Somerset v. Durling, 174 N.J.Super. 52, 415 A.2d 371 (Ch.Div.1980), for example, the court applied Lawrence to read an affidavit of title to modify a deed.
 
 
 47
 [The parties] apparently were of equal bargaining power, and were represented by counsel. The bargain which was struck involved no unfair advantage or unconscionability as to either. The parties were free to arrange for whatever degree of risk they desired.
 
 
 48
 415 A.2d at 374. See also Mayfair Farms Holding Corp. v. Kruvant Enterprises Co., 64 N.J.Super. 465, 166 A.2d 585, 590 (App.Div.1960) (modification was "understood by the presumably business-wise individuals acting for their corporate principals"), vacated on other grounds, 35 N.J. 558, 173 A.2d 905 (1961).
 
 
 49
 This description does not apply to the conditions under which Atco obtained its insurance. Indeed, insurance contracts rarely reflect equal bargaining power. As the New Jersey Supreme Court explained:
 
 
 50
 The doctrine that courts do not lightly interfere with freedom of contract must be applied cautiously and realistically with regard to complex contracts of insurance, since such contracts are highly technical, extremely difficult to understand, and not subject to bargaining over the terms. They are contracts of adhesion, prepared unilaterally by the insurer, and have always been subjected to careful judicial scrutiny to avoid injury to the public.
 
 
 51
 Sparks v. St. Paul Insurance Co., 100 N.J. 325, 335, 495 A.2d 406, 412 (1985) (citations omitted). The Supreme Court of New Jersey recently explained in Meier v. New Jersey Life Insurance Co., 101 N.J. 597, 503 A.2d 862 (1986): "In New Jersey, it has long been established that while insurance policies are contractual in nature, they are not ordinary contracts but contracts of adhesion between parties who are not equally situated." 503 A.2d at 869. Meier explained that New Jersey applies rules of adhesion because of the unequal bargaining power of the parties and because the "insurance companies possess all the expertise and unilaterally prepare" the policies. Id. See also Linden Motor Freight Co. v. Travelers Insurance Co., 40 N.J. 511, 193 A.2d 217, 224 (1963) ("construction of insurance policy language is not ordinarily controlled by the standards applicable to a contract negotiated at arms length between two parties on the same plane"). Furthermore, as a general matter, where the application of a clause in an insurance policy is unclear, we are bound to follow New Jersey's rule of construing insurance policies liberally, favoring coverage where an ambiguity exists. See Ohio Casualty Insurance Co. v. Benson, 87 N.J. 191, 432 A.2d 905, 908 (1981).
 
 
 52
 We conclude that the Lawrence rule does not apply in this case. First, there is no evidence that the parties actually intended the "two or more policies" clause of the business auto insurance to apply to the general liability policy. Indeed, the existence of the integration clause in both policies indicates that each policy stood on its own. The integration clause in the comprehensive general policy, absent clear evidence that the policies were designed to be read together, precludes its modification by the business auto policy. Therefore, even though the policies were written simultaneously for the same named insured there is insufficient evidence to find that the parties intended one policy to modify the other. Furthermore, evidence concerning the unequal bargaining positions of the parties renders Lawrence particularly inapplicable to our case.
 
 VI. CONCLUSION
 
 53
 First, we will affirm the district court's grant of summary judgment to Fitchburg, because the Fitchburg homeowner's policy does not apply to this accident. Second, because the policies were issued to different insureds, we will affirm the district court's declaration that payments pursuant to the personal auto policy do not count against the $100,000 maximum set forth under the "two or more policies" clause in the business auto policy. Third, we will reverse the district court's grant of partial summary judgment to USF & G and remand for factual findings necessary to determine whether the comprehensive general policy applies to this incident. Finally, addressing a question that the district court did not have to reach, we hold that the "two or more policies" clause in the business auto policy does not apply to recovery available under the comprehensive general policy because New Jersey law will not read one contract to modify another absent a clear indication that parties of equal bargaining power intended such a modification. We therefore will affirm in part, reverse in part and remand for further proceedings consistent with this opinion. If on remand the district court finds that the exemption in the USF & G comprehensive liability policy does not apply, then the policy will cover Berger to the full extent of its coverage and the "two or more policies" exception in the business auto policy will not limit Berger's recovery under the comprehensive liability policy.
 
 
 
 [1]
 The Fitchburg policy, in its definitions section provides:
 "insured" means you and the following residents of your household:
 a. your relatives;
 b. any other person under the age of 21 who is in the care of any person named above.
 
 
 [2]
 The clause, an endorsement to the "Conditions" section of the Business Auto policy, reads:
 TWO OR MORE POLICIES ISSUED BY US
 If this policy and any other policy issued to you by us or any company affiliated with us apply to the same accident, the aggregate maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by us or any affiliated company specifically to apply as excess insurance over this policy.
 
 
 [3]
 Under the definition section of the Business Auto policy,
 "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.
 The named insured under Item One of the Business Auto policy is:
 Wolfgang Schmitter, Craig Buffington
 T/A Atco Pump & Equipment Co.
 Under the "Form of Named Insured's Business" heading, there are four boxes: "individual," "partnership," "corporation," or "other." The box marked "partnership" is checked.
 
 
 [4]
 For example, the USF & G comprehensive liability policy provides in its declaration section that "this policy embodies all agreements existing between [the insured] and the company or any of its agents relating to this insurance."