Joseph **LONERGAN** and Sally Lonergan, his wife, Individually and as Administrators of the Estate of John J. Lonergan, deceased, Donald R. Lederer and Janet Lederer, his wife, Individually, and Janet Lederer as Administratrix of the Estate of James R. Lederer, deceased, Ronald Lee Higginbotham and Un Ok Higginbotham, Individually, and Un Ok Higginbotham as Personal Representative of the Estate of John L. Higginbotham, deceased, and Brian Green, Plaintiffs,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

Civ. A. No. 93C–04–119.

Superior Court of Delaware,
New Castle County.

Submitted Jan. 17, 1995.
Decided May 17, 1995.

Bartholomew J. Dalton, Brandt and Dalton, P.A., for plaintiffs.

Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, for defendant.

## OPINION

HERLIHY, Judge.

This is a declaratory judgment action to determine insurance coverage. The dispute arises out of a triple fatal accident. The vehicle at fault was driven by Dale Rausch [Rausch]. It was owned by Middletown Service Center, Inc. [Middletown].

The Rausch vehicle in question was insured through Nationwide Mutual Insurance Company [Nationwide] under a Middletown business policy. Payment to plaintiffs has already been made pursuant to that policy. This action was filed to determine whether a separate policy, issued by Nationwide for Middletown garage operations, provides additional coverage for the damages arising out of the accident. Both parties have filed motions for summary judgment and have stipulated that the case can be disposed of based on the record presented.

### FACTS

On October 12, 1991 at around 2:30 a.m., Rausch was driving a 1979 Chevy Blazer southbound on Delaware 896 just outside of Middletown, Delaware. Several vehicles were headed northbound. Rausch claimed he fell asleep.

Two vehicles heading northbound saw an oncoming vehicle with one headlight. They both moved suddenly to the shoulder to avoid that vehicle coming at them in their lane of travel. Rausch was the driver of the oncoming vehicle.

Behind these two northbound vehicles was a third vehicle being driven by John J. Lonergan [Lonergan]. Passengers in the Lonergan vehicle were James R. Lederer, John L. Higginbotham and Brian Green [they and their administrators are collectively "plaintiffs"]. Unlike the first two vehicles, Lonergan was unable to swerve out of the way. Rausch's Blazer collided head on with the Lonergan vehicle instantly killing Lonergan and Lederer. Higginbotham died later at the hospital and Green was injured but survived.

The Blazer which Rausch was driving at the time of the accident was owned by Middletown and was used in connection with the business, primarily to pick up automobile parts. Middletown answered calls for nighttime or weekend service but the record does not indicate whether the Blazer itself was used to answer such service calls. In the time he worked for his father at Middletown, Rausch had never answered nighttime calls for service. As part of their job, employees using Middletown vehicles, including Rausch, were expected to keep the vehicles in good operating order.

Robert Rausch allowed his son to use the Blazer for personal matters. Rausch had such permission when he went hunting early in the morning of October 11. At that time, both headlights were working. He had permission to take the Blazer home after work on October 11, which was a Friday and he was not scheduled to work the next day, Saturday.

After going home, Rausch drove the Blazer to a local bar where he socialized for a while. He met a young lady at the bar. Later, he and the young lady left the bar and were headed to his house in the Blazer when the accident occurred. At the time of the crash, Rausch was unaware that the left

headlight was out.[1]

Middletown and/or Robert Rausch had twelve separate policies with Nationwide. None was an excess policy. The Blazer was insured under a business vehicle policy. Pursuant to that policy, Nationwide has paid out $1,000,000. Middletown also had a blanket protection commercial property policy. It is that policy which plaintiffs seek to invoke to obtain an additional $1,000,000. The Blazer was not a covered vehicle under this second policy. There are no other policies at issue.

### PARTIES' CONTENTIONS

Plaintiffs contend that a cause of the accident, in addition to Rausch's own conduct, was the inoperative left front headlight on the Blazer. They claim this situation caused several drivers to believe the Rausch vehicle was an oncoming motorcycle operating in the proper lane, not a Blazer operating in the wrong lane. They argue this phenomenon caused the oncoming drivers to react more slowly in appreciating what was approaching them and that Lonergan's inability to so appreciate was caused, in part, by the inoperative headlight.

Plaintiffs contend that the Blazer was used in Middletown's course of business. They argue that part of that business was to maintain Middletown's own vehicles in good operating condition, including making sure both headlights were properly functioning, in order to be usable for answering service calls or for other functions.

Next, the plaintiffs point to the language of the policy at issue which provides for certain coverage for accidents arising from garage operations. Included within garage operations, they contend, is activity designed to maintain Middletown's own vehicles. The failure to maintain a vehicle is a risk the policy covered. Since there was a failure to maintain the Blazer's headlight and the inoperative headlight was a proximate cause of the fatal accident, plaintiffs claim Nationwide is liable to them for an additional $1,000,000. They do not argue that this policy is an excess policy.

They also contend that there are certain ambiguities in the policy regarding covered automobiles. They contend such ambiguities must be resolved against Nationwide.

Finally, responding to Nationwide's assertion that only the Lederers have preserved their claim to the extent that the statute of limitations has run as to the joining defendants, plaintiffs assert that Nationwide did not comply with 18 *Del.C.* § 3914 which requires that the insurer provide plaintiffs with the applicable statute of limitations' date.

Nationwide counters that the garage policy by its unambiguous language is not intended to serve as an excess or umbrella policy and is not applicable to the circumstances. Even if it is applicable with another policy, the policy provides that the total limits shall not exceed the highest limit under either policy, which Nationwide has already tendered.

### APPLICABLE STANDARDS

■ Where there are cross-motions for summary judgment, neither party's motion can be granted unless there is no genuine issue of material fact and one of the parties is entitled to judgment as a matter of law. *Empire of America v. Commercial Credit,* Del.Supr., 551 A.2d 433, 435 (1988). The parties have indicated here, and the Court concurs, that there are no genuine issues of material fact present. Interpretation of insurance contracts is a matter of law. *Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168, 1170 (1990).

### DISCUSSION

By necessity, the analysis of this issue in this case starts with the policy and its language. As noted, the policy is entitled "Blanket Protection Commercial Property Coverage". The Blazer was not listed as a covered vehicle in the policy. It is undisputed that plaintiffs do not seek recovery under this policy because the Blazer is a "covered" vehicle.

The applicable insurance language is as follows:

---

1. The Court is proceeding on the basis that it is    factually undisputed that it was out.

### Section II—Liability Coverage

#### "Garage Operations" Other than Covered Autos"

We will pay all sums [Middletown] legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

\* \* \* \* \* \*

### Section VI—Definitions

\* \* \* \* \* \*

E. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION 1 of this Coverage Form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business.

It is the last sentence of the definition of garage operations upon which plaintiffs rely. Their argument is that the Blazer was used from time to time as part of Middletown's business and that it was necessary to keep it in good operating order. To so keep it required that inoperative headlights be replaced. They contend such maintenance is "necessary or incidental to a garage business".

Nationwide contends that the Court must look to the use of the vehicle at the time of the crash. The use was personal to Rausch when the crash occurred. He was not expected to work the next day nor was he expected to respond to night calls for service. He had used it to go hunting early Friday morning before the accident and was taking a young lady home after socializing at a bar. Thus, Nationwide argues there is no way Rausch's use could be considered as part of "garage operations".

In *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir.1985), the Court had to interpret the applicability of a garage operations policy. In that case, the Court held that "garage operations"[2] did not include coverage for injuries caused in a collision of a customer's car, allegedly picked up for repairs, but used instead by the owner to ram his estranged wife's car.

The court in *Renda v. Brown*, La.Ct.App. 563 So.2d 328 (1990) held that no coverage existed under a garage operations policy. The policy provided that there would be coverage for "an occurrence arising out of garage operations". *Id.* at 333. The vehicle was a truck used primarily by the owner's son for personal reasons and occasionally in the owner's business. On the night in question, the son was using the truck with permission but for a personal errand. A fatal accident occurred. The court assumed the truck was principally used in garage operations but held coverage did not exist because its use at the time of the accident was purely personal.

In the case of *Continental Insurance Co. v. Colston*, Tex.Civ.App., 463 S.W.2d 461 (1971), an automobile dealership mechanic was allowed to take various used cars for personal reasons. On one occasion involving a personal trip, he had an accident. There was a policy indicating coverage for an accident resulting from the use of any (dealership) automobile for the purpose of garage operations. The policy provided coverage for automobiles principally used in garage operations but used occasionally for non-business purposes. Garage operations was defined as " 'the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto.' " *Id.* at 463.

The court held that such personal use was not within the policy language and the insured's expectations were that its policy would not cover such personal usage. *Id.* at 464.

**2.** The Court did not quote the definition of garage operations from the policy, assuming it was defined in the policy.

■ There is not a faint hint of use of the Blazer for garage operations under the circumstances herein. Perhaps if Rausch were driving to Middletown's premises to replace the headlight the issue might be closer. The Court acknowledges, as other courts have, that vehicles such as the Blazer are used for business and personal purposes. But it stretches too far the policy language here at issue to say that this Blazer was being used in garage operations because Rausch may have responsibility to repair something he did not know needed repair on a vehicle used in the business but which he used to go to a bar and drink, pick up a lady friend and start to take her back to his house at 2:30 a.m. Such coverage cannot have been in Middletown's reasonable expectations of coverage.

As deserving as all of these plaintiffs are because of this tragic and mindless loss, the use of the Blazer under the circumstances herein does not fall with the policy language. There is no ambiguity to be resolved against Nationwide.

Even if the garage operations' definition could be interpreted as ambiguous, the end result would not be different due to an additional clause found in both the business automobile, under which payment has already been made, and the garage operations policies which provides for the situation when two or more policies could provide coverage for the same accident. Under section IV B(8) of the Business Auto Conditions, the policy states that:

**Two or more coverage forms or policies issued by us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Thus, it is clearly stated that even if another Nationwide policy is applicable, the insured may not stack several different policies that happen to cover the same accident. However, this restriction does not apply when there is a Nationwide or affiliated policy purchased to provide excess coverage. This exception, however, is not applicable under the present circumstances as none of the pertinent policies provide excess coverage and plaintiffs do not argue that the garage operations' policy is excess.

Plaintiffs argue that the "Blanket Protector Garage Coverage Form" states that the aggregate limit amount is $2,000,000. According to plaintiffs, this declaration is ambiguous and should be construed against the drafter which would provide at a minimum an additional $1,000,000 of coverage. The Court disagrees.

First, the garage policy is deemed inapplicable under the present circumstances. Even if the last sentence in the garage operations' definition could be involved, the $2,000,000 aggregate amount language responds to covered automobiles, in this case non-owned automobiles, which has also been shown to be inapplicable. The Blazer was not a covered vehicle. Furthermore, the $2,000,000 aggregate limit language applies to premises liability during garage operations. It is undisputed that Rausch's use of the Blazer was personal and the collision did not occur on the premises where any garage operations were conducted. Finally, the language taken from the above-quoted Section 8 above specifies the aggregate amount applies to one accident, which in this case is limited to $1,000,000.

Since Nationwide has already paid the maximum amount of coverage based upon the business automobile policy, the clear language in both policies provides that Nationwide's total liability is limited to the maximum amount of one policy. Under these circumstances, the limit of insurance is the amount that the insured bargained and paid premiums for, in this case $1,000,000.

Based upon the above-analysis, the dispute regarding the statute of limitations and written notice by the insurer is rendered moot.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED.**