824 So.2d 234 (2002)
HARTFORD INSURANCE COMPANY OF THE MIDWEST, Hartford Insurance Company of the Southeast, and Hartford Casualty Insurance Company, Appellants,
v.
BELLSOUTH TELECOMMUNICATIONS, INC., and Cotton Construction, Inc., Appellees.
No. 4D01-3859.
District Court of Appeal of Florida, Fourth District.
July 24, 2002.
Rehearing Denied September 4, 2002.
*235 Gina E. Caruso of Hinshaw & Culbertson, Fort Lauderdale, for appellants.
John R. Hargrove and Robert C. Weill of Heinrich Gordon Hargrove Weihe & James, P.A., Fort Lauderdale, for appellees.
HAZOURI, J.
On August 8, 2000, BellSouth Telecommunications, Inc. ("BellSouth") and Cotton Construction, Inc. ("Cotton"), (collectively, "Plaintiffs") filed suit against Hartford Insurance Company of the Midwest ("Midwest"), Hartford Casualty Insurance Company ("Casualty") and Hartford Insurance Company of the Southeast ("Southeast"), (collectively, "Hartford") for breach of an insurance coverage contract and bad faith. The claim for bad faith was abated, pending resolution of the insurance coverage claim. The parties filed cross-motions for summary judgment on the insurance coverage claim.
Plaintiffs contend that Midwest and Southeast issued two separate policies, one with $1 million in coverage for automobile liability and one with $1 million in coverage for general liability, for a total of $2 million in coverage. Hartford contends that Midwest and Southeast issued one single multi-flex[1] policy with two coverage parts for a total of $1 million in coverage. Midwest and Southeast are wholly-owned subsidiaries of Hartford Financial Services Group.
The underlying facts indicate that Plaintiffs entered into a contract, whereby Cotton agreed to perform utility construction for BellSouth in the Florida Keys. Pursuant to the contract, Cotton agreed to indemnify, defend and hold BellSouth harmless for any and all claims or suits incident to performance of the work contemplated by the contract. Cotton's indemnification obligation for BellSouth's own negligence was limited to $1 million. Cotton also agreed to obtain both commercial general liability insurance and automobile liability *236 insurance, naming BellSouth as an additional insured.
As a result, Cotton obtained the policy at issue from Hartford. It is a special multi-flex policy, number 21UENPG2367. The policy includes a "Common Policy Declarations" section, which states, "This special multi-flex policy consists of the Common Policy Declaration Page, the Policy Jacket, Common Policy Conditions, Coverage Parts and any other Forms and Endorsements issued to be a part of this policy." It lists the coverage parts as the Commercial Auto Coverage Part ("Auto Part") and the Commercial General Liability Coverage Part ("CGL Part"). It further indicates a premium of $15,898 for the Auto Part and a premium of $18,587 for the CGL Part. Cotton is the named insured, while BellSouth is an additional insured. The parties do not dispute that Cotton paid the separate premiums for the Auto Part and the CGL Part. The Auto Part was issued by Midwest. The CGL Part was issued by Southeast.
The Common Policy Conditions section sets forth conditions which apply to all Coverage Parts. The included clauses deal with cancellation, changes, examination of books and records, inspections and surveys, premiums and transfer of rights and duties.
The Auto Part follows and includes the following: the Business Auto Coverage Form, Endorsement for Florida Personal Injury Protection, Florida Uninsured Motorists Coverage Non Stacked and Endorsement for Florida Changes. The Business Auto Coverage Form includes a table of contents and the following Sections: Covered Autos, Liability Coverage, Physical Damage Coverage, Business Auto Conditions and Definitions. The Liability Coverage Section provides:
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
The limit of liability is $1 million for each "accident." The Business Auto Conditions Section contains a clause, which prohibits the stacking of liability limits under subheading B. General Conditions[2]:
8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US
If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.
The Auto Part does not contain any clauses referencing the CGL Part.
The CGL Part follows and includes the following: Quick Reference table of contents, Declarations Pages, Commercial General Liability Coverage Form, Endorsement Florida Changes, Special Broad Form Commercial General Liability Endorsement, EndorsementAdditional Insured. The Commercial General Liability Coverage Form includes the following sections: Coverages, Who is Insured, Limits of Insurance, Commercial General Liability Conditions and Definitions. The limit of liability is $1 million for each "occurrence." The CGL Part does not contain any Forms or Endorsements with an antistacking *237 clause or that reference the Auto Part.
During the policy period, Cotton's subcontractor was operating a boom truck when he allegedly caused an accident. As a result, a personal injury action, Torries v. BellSouth Communications, Inc., Case No. CL 94-13 AG, was filed against Plaintiffs. BellSouth filed a cross-claim against Cotton for indemnification under their contract. Hartford provided Plaintiffs in the instant case with a defense while this underlying action was pending. The case was ultimately settled. Hartford paid a total of $2 million toward the settlement on behalf of Cotton. Hartford paid $1 million under an umbrella policy issued by Hartford Casualty, which is not at issue in the instant action. Midwest paid $1 million in primary coverage toward settlement on behalf of Cotton, under the multi-flex policy, which is the subject of the instant action. Midwest and Southeast refused to pay anything further on the basis that coverage was thereby exhausted. Hartford did not obtain a release from Bell-South relating to its cross-claim for indemnification.[3]
At the hearing on the motions for summary judgment, Plaintiffs argued: the Auto Part and the CGL Part are two separate policies; even if the Auto Part and CGL Part are not two separate policies, the antistacking clause in the Auto Part does not apply to the CGL Part; the two parts provide distinct coverage for $1 million; the $1 million they received was paid by Midwest under the Auto Part; and, they are entitled to $1 million under the CGL Part. Hartford argued: there is just one policy as the policy contains a common policy declarations page and one policy number; the antistacking provision in the Auto Part applies to all Forms, including the Forms in the Auto Part and the Forms in the CGL Part; the policy liability limit is $1 million which has been paid; and Plaintiffs are not entitled to coverage under the Auto Part because the boom truck which allegedly caused the accident in the underlying action is not a covered vehicle.
The trial court entered a Partial Final Judgment, granting Plaintiffs' Motion for Summary Judgment, denying Hartford's Motion for Summary Judgment and ordering Southeast to pay Plaintiffs $1 million, together with pre-judgment interest of $549,999, for a total of $1,549,999.
Hartford argues the trial court erred when it determined that Plaintiffs were entitled to an additional $1 million under the multi-flex policy and granted partial summary judgment in their favor. Hartford contends that the antistacking clause in the Auto Part unambiguously applies to the CGL Part, limiting liability coverage to $1 million per accident or occurrence.[4] We agree.
Construction of an insurance contract and the determination of whether Florida law requires the insurer to provide coverage are questions of law subject to de novo review on appeal. See Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 357 (Fla. 4th DCA 2001), approved, 819 *238 So.2d 732 (Fla.2002). In Siegle, this court set forth the legal principles relied upon when interpreting an insurance policy, as follows:
We start with the basic legal principle in Florida that the scope and extent of insurance coverage is defined by the language and terms of the policy. See, e.g., Union Am. Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000); United States Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d DCA 1976). Where the language of the policy is plain and unambiguous, "there is not need for judicial construction and the contract must be enforced as written." Fla. Power & Light Co. v. Penn Am. Ins. Co., 654 So.2d 276, 278 (Fla. 4th DCA 1995) (citing Great Global Assurance Co. v. Shoemaker, 599 So.2d 1036 (Fla. 4th DCA 1992)). Any ambiguities in insurance policy contracts are interpreted liberally in favor of the insured and strictly against the insurer. See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993). Lastly, we note that exclusions from coverage must be clearly defined. See Liberty Mut. Ins. Co. v. Capeletti Bros., Inc., 699 So.2d 736, 738 (Fla. 3d DCA 1997).
Id. at 359. Other than these general principles, we can find no Florida cases interpreting the "antistacking clause" involved in the instant case.
In interpreting the antistacking clause, we find the decisions in Sweeden v. Farmers Insurance Group, 71 Ark.App. 381, 30 S.W.3d 783 (2000), and Lonergan v. Nationwide Mutual Insurance Co., 663 A.2d 480 (Del.Super.Ct.1995), persuasive. In Sweeden, an Arkansas Court of Appeal found the clause prevented the stacking of coverage under two separate policies issued by affiliated insurance carriers. Therein, Mid Century Insurance Company issued an auto liability policy to the insured, and Farmers Insurance Exchange issued a commercial garage policy to the insured. The garage policy contained a clause identical to the one at issue in this case. Id. at 788. The court determined that, because Mid Century and Farmers Insurance were affiliated, the clause limited their combined coverage to the highest applicable limit under either policy. Id.
In Lonergan the Superior Court of Delaware found an identical clause unambiguously prevented stacking of coverage under two policies issued by the same insurance carrier. Therein, plaintiffs obtained two insurance policies from Nationwide, a business vehicle policy and a blanket protection commercial property policy. Nationwide paid out $1 million under the business vehicle policy and plaintiffs sought an additional $1 million under the garage policy. Id. at 482. Both policies contained a clause identical to the one at issue in this case. Id. at 484. The court determined that the clause was not ambiguous and prevented the insured from stacking different policies that happen to cover the same accident. Id.
Consistent with the decisions in Sweeden and Lonergan, the antistacking clause in this case is unambiguous, limiting coverage provided by affiliated insurance carriers for the same accident to $1 million. Plaintiffs do not dispute that Midwest and Southeast are affiliated insurance carriers.
Plaintiffs raise three arguments: (1) the absence of the antistacking clause from the CGL Part prevents Southeast from relying on the clause, (2) Southeast cannot rely upon the antistacking clause because it failed to comply with Florida's Claims Administration Statute, and (3) the antistacking clause does not apply to BellSouth.
Plaintiffs first argue that the antistacking clause does not limit coverage under *239 the CGL Part because the Auto and CGL Part are separate policies and the antistacking clause is not in the CGL Part. Plaintiffs rely on the decision in Berger v. United States Fidelity & Guaranty Co., 834 F.2d 1154 (3rd Cir.1987). In Berger, the insured sought coverage under two separate policies issued by the same insurance carrier, an Auto policy and CGL policy. Id. at 1160. The Auto policy included an antistacking clause identical to the one at issue in this case. See id. at 1158 n. 2. The insured argued that because the clause did not appear in the CGL policy, the clause did not apply to the CGL policy. Id. at 1160. The court determined that the existence of an integration clause in both policies indicated that each policy stood on its own and absent clear evidence that the policies were to be read together, the integration clause in the CGL policy precluded application of the clause in the Auto policy. Id. at 1162.
This case is distinguishable from Berger because in this case the Auto Part and CGL Part are coverage parts within a single multi-flex policy with a single policy number. The policy begins with the "Common Policy Declarations," which indicates that the policy consists of "the Coverage Parts and any Other Forms and Endorsements" and specifically lists the Auto Part and CGL Part. The policy also includes a "Common Policy Conditions" section which sets forth conditions which are subject to all Coverage Parts. Thus, there is evidence that the parts are intended to be read together. Although the Auto Part was issued by Midwest and the CGL Part was issued by Southeast, both are wholly owned subsidiaries of Hartford Financial Services Group. Further, neither the Auto Part nor the CGL Part include an integration clause like the one found in Berger.
The fact that the antistacking clause in the Auto Part applies to both the Auto and CGL Part is buttressed by the policy's inclusion of a provision limiting liability coverage in the Auto Part. That provision is found in the Liability Coverage section and provides:
C. LIMIT OF INSURANCE
Regardless of the number or covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
If the antistacking provision was intended to be limited to the Auto Part, as argued by Plaintiffs, then the above provision limiting liability coverage in the Auto Part would be unnecessary and mere surplusage.
Plaintiffs' reliance on Fireman's Fund Insurance Co. v. Pohlman, 485 So.2d 418 (Fla.1986) and United States Fire Insurance Co. v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977) is also misplaced. In those cases, the issue was whether an endorsement to an insurance policy incorporated into its terms a statute amended after the date of the original contract but before subsequent endorsement. The courts noted that it is possible that an endorsement which either adds a premium or adds both a premium and a vehicle constitutes the issuance of a new policy incorporating a statutory amendment into its terms. 485 So.2d at 420. The decisions do not stand for the proposition that where there are separate coverage premiums, there are separate policies, as argued by Plaintiffs.
Second, Plaintiffs argue that Southeast cannot rely upon the antistacking clause, because Hartford failed to comply *240 with Florida's Claims Administration Statute, section 627.426, Florida Statutes (1999). Section 627.426(2) provides:
(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.
Although there is no dispute that Hartford did not comply with section 627.426, Hartford's assertion of the antistacking clause does not constitute a coverage defense requiring it to comply with section 627.426(2). The Florida Supreme Court explained what constitutes a "coverage defense" in AIU Insurance Co. v. Block Marina Investment, Inc., 544 So.2d 998, 999-1000 (Fla.1989):
We do not believe that the legislature intended, by the enactment of section 627.426(2), to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute.... [T]he term "coverage defense," as used in section 627.426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law.
Relying upon AIU, the third district determined, "The statute applies only when the insurer totally denies coverage." Pacific Employers Ins. Co. of L.A., Cal. v. Ott, 545 So.2d 462, 463 (Fla. 3rd DCA 1989). The court concluded that where the insurer does not deny coverage but simply asserts that liability is limited, the statute does not apply. Id. at 464. Pursuant to AIU and Pacific Employers, the statute does not apply in this case as Hartford does not deny coverage under the CGL Part but argues that liability is limited to $1 million under the policy's antistacking clause.
As their third argument, Plaintiffs contend that even if the antistacking *241 clause applies, it cannot be applied against BellSouth because it is an additional insured, not a named insured. The antistacking clause provides that it applies to any Coverage Form or policy "issued to you by us or any company affiliated with us." Plaintiffs argue that because the policy defines "you" as the "named insured" and the named insured is Cotton, the clause only applies to Cotton.
Plaintiffs misinterpret the clause. The clause does not provide that it applies to "you"; rather it provides that it applies to any Coverage Form or policy issued to you. The policy and forms were issued to Cotton; thus, the clause applies to the forms at issue. As BellSouth is an additional insured and "the rights of the additional insured can be no greater than those of the named insured," the clause applies to both Cotton and BellSouth. See Maxwell v. U.S. Fidelity & Guar. Co., 399 So.2d 1051, 1056 (Fla. 1st DCA 1981) (Ervin, J., specially concurring); see also Almendral v. Sec. Nat'l Ins. Co., 704 So.2d 728, 729 (Fla. 3rd DCA 1998).
The antistacking clause unambiguously limits coverage for the same accident to $1 million. Thus, the trial court reversibly erred when it granted summary judgment in favor of Plaintiffs as it should have granted summary judgment in favor of Hartford. Accordingly, the trial court's order is reversed and the court is directed to enter summary judgment in favor of Hartford on the issue of coverage.
REVERSED.
WARNER and MAY, JJ., concur.
NOTES
[1] Hartford uses the term multi-flex to refer to policies that provide more than one line of insurance such as general liability and auto and/or worker's compensation.
[2] The parties have referred to this clause as the "antistacking clause."
[3] The Torries case involved severe injuries and was settled for an amount far in excess of $2 million. The excess amount is the subject of the bad faith claim, which was abated pending the outcome of the coverage claim.
[4] Alternatively, Hartford argues that assuming coverage can be stacked, Plaintiffs are not entitled to an additional $1 million under the policy because there is no coverage available under the Auto Part. Hartford contends that the boom truck is not a "covered auto" under the business auto coverage part, which excludes "mobile equipment" from the definition of "auto." We do not reach this issue, as we dispose of the case on the first issue.